TROY BAKER *v.* COMMISSIONER OF CORRECTION
(SC 17575)

Borden, Norcott, Katz, Palmer and Zarella, Js.

Argued November 21, 2006—officially released February 13, 2007

*Steven R. Strom*, assistant attorney general, with whom, on the brief, was *Richard Blumenthal*, attorney general, for the appellants (respondents).

*Chris Young*, certified legal intern, with whom was *Timothy H. Everett*, and, on the brief, *Douglas Heim*, certified legal intern, for the appellee (petitioner).

*Opinion*

KATZ, J. The respondents,[1] the commissioner of correction and the board of pardons and paroles (board), appeal, following our grant of certification, from the judgment of the Appellate Court reversing the judgment of the trial court dismissing the amended petition for a writ of habeas corpus of the petitioner, Troy Baker. The sole issue presented on appeal to this court is whether an inmate has a cognizable liberty interest in his parole eligibility status sufficient to invoke the subject matter jurisdiction of the habeas court. We conclude that our statutory scheme affords no cognizable liberty interest in parole eligibility status. Accordingly, we reverse the judgment of the Appellate Court.

---

[1] The petitioner, Troy Baker, named the commissioner of correction as the respondent. The petitioner and the commissioner of correction thereafter jointly filed a motion to add the board of parole as a respondent, which motion was granted. Subsequently, the board of parole was renamed the board of pardons and paroles. See Public Acts 2004, No. 04-234, § 1.

The record reveals the following facts and procedural history. The petitioner was convicted of criminal possession of a firearm in violation of General Statutes (Rev. to 1999) § 53a-217, as amended by Public Acts 1999, No. 99-212, § 1,[2] carrying a pistol or revolver without a permit in violation of General Statutes (Rev. to 1999) § 29-35 (a), as amended by Public Acts 1999, No. 99-212, § 2,[3] sale of narcotics in violation of General Statutes § 21a-277 (a),[4] and forgery in the second degree in violation of General Statutes § 53a-139 (a) (3).[5] The offenses were committed on February 19, 2000, and he was sentenced, on July 13, 2001, to a total effective sentence of fifteen years, execution suspended after

[2] General Statutes (Rev. to 1999) § 53a-217 (a), as amended by Public Acts 1999, No. 99-212, § 1, provides in relevant part: "A person is guilty of criminal possession of a firearm . . . when such person possesses a firearm or electronic defense weapon and (1) has been convicted of a felony . . . ."

[3] General Statutes (Rev. to 1999) § 29-35 (a), as amended by Public Acts 1999, No. 99-212, § 2, provides in relevant part: "No person shall carry any pistol or revolver upon one's person, except when such person is within the dwelling house or place of business of such person, without a permit to carry the same issued as provided in section 29-28 . . . ."

[4] General Statutes § 21a-277 (a) provides: "Any person who manufactures, distributes, sells, prescribes, dispenses, compounds, transports with the intent to sell or dispense, possesses with the intent to sell or dispense, offers, gives or administers to another person any controlled substance which is a hallucinogenic substance other than marijuana, or a narcotic substance, except as authorized in this chapter, for a first offense, shall be imprisoned not more than fifteen years and may be fined not more than fifty thousand dollars or be both fined and imprisoned; and for a second offense shall be imprisoned not more than thirty years and may be fined not more than one hundred thousand dollars, or be both fined and imprisoned; and for each subsequent offense, shall be imprisoned not more than thirty years and may be fined not more than two hundred fifty thousand dollars, or be both fined and imprisoned."

[5] General Statutes § 53a-139 (a) provides in relevant part: "A person is guilty of forgery in the second degree when, with intent to defraud, deceive or injure another, he falsely makes, completes or alters a written instrument or issues or possesses any written instrument which he knows to be forged, which is or purports to be, or which is calculated to become or represent if completed . . . (3) a written instrument officially issued or created by a public office, public servant or governmental instrumentality . . . ."

seven years, and three years of probation.[6] Thereafter, the petitioner filed a petition for a writ of habeas corpus alleging that the respondents improperly had classified him as a violent offender under General Statutes (Rev. to 2001) § 54-125a (b) (2) and (c), as amended by Public Acts, Spec. Sess., June, 2001, No. 01-9, § 74,[7] thus render-

---

[6] We note that, while this appeal was pending, the petitioner received favorable parole consideration and was released to a halfway house in Bridgeport. We need not decide, however, whether these facts render the petitioner's claim moot; see, e.g., *Herbert* v. *Manson*, 199 Conn. 143, 143–44 n.1, 506 A.2d 98 (1986) (habeas petition not moot despite petitioner's discharge from parole during pendency of appeal because of collateral consequences of conviction); or whether this case satisfies one of the mootness exceptions; see, e.g., *Conetta* v. *Stamford*, 246 Conn. 281, 295–96, 715 A.2d 756 (1998) (issues capable of repetition yet evading review); because our resolution of this appeal concluding that the court lacks jurisdiction is dispositive. See *ABC, LLC* v. *State Ethics Commission*, 264 Conn. 812, 822, 826 A.2d 1077 (2003) (concluding that determination that trial court lacked subject matter jurisdiction because plaintiffs were not aggrieved was dispositive of appeal and, accordingly, declining to address other jurisdictional claims raised by parties).

[7] General Statutes (Rev. to 2001) § 54-125a, as amended by Public Acts, Spec. Sess., June, 2001, No. 01-9, § 74, provides in relevant part: "(a) A person convicted of one or more crimes who is incarcerated on or after October 1, 1990, who received a definite sentence or aggregate sentence of more than two years, and who has been confined under such sentence or sentences for not less than one-half of the aggregate sentence or one-half of the most recent sentence imposed by the court, whichever is greater, may be allowed to go at large on parole in the discretion of the panel of the Board . . . for the institution in which the person is confined, if (1) it appears from all available information, including any reports from the Commissioner of Correction that the panel may require, that there is reasonable probability that such inmate will live and remain at liberty without violating the law, and (2) such release is not incompatible with the welfare of society. . . .

"(b) (1) No person convicted of any of the following offenses, which was committed on or after July 1, 1981, shall be eligible for parole under subsection (a) of this section: Capital felony, as defined in section 53a-54b, felony murder, as defined in section 53a-54c, arson murder, as defined in section 53a-54d, murder, as defined in section 53a-54a, or any offense committed with a firearm, as defined in section 53a-3, in or on, or within one thousand five hundred feet of, the real property comprising a public or private elementary or secondary school. (2) A person convicted of an offense, other than an offense specified in subdivision (1) of this subsection, where the underlying facts and circumstances of the offense involve the use, attempted use

ing him ineligible for parole until he had served 85 percent of his sentence.[8] According to his petition, the board should have classified the petitioner as a nonviolent offender under § 54-125a (a), which he claims would have required the board to consider his eligibility for parole after he had served 50 percent of his sentence. See footnote 7 of this opinion. In addition, the petitioner claimed that the respondents had violated the ex post facto clause of the federal constitution by classifying him as a violent offender based on robbery convictions from 1991 and 1995, as those convictions predated the enactment of subsection (2) of § 54-125a (b), prescribing the 85 percent parole eligibility restriction for persons convicted of offenses involving the use, attempted use or threatened use of physical force, and subsection (c), requiring the board to enact regulations regarding the classification and release of these violent offenders. See Public Acts 1995, No. 95-255, § 1 (prescribing effective dates of July 1, 1996, for what is now § 54-125a [b] [2], and July 1, 1995, for what is now § 54-125a [c]).

The respondents claimed that the petitioner accurately had been classified as a violent offender and that the board properly had exercised its statutory discre-

_____

or threatened use of physical force against another person shall be ineligible for parole under subsection (a) of this section until such person has served not less than eighty-five per cent of the definite sentence imposed.

"(c) The Board . . . shall, not later than July 1, 1996, adopt regulations in accordance with chapter 54 to ensure that a person convicted of an offense described in subdivision (2) of subsection (b) of this section is not released on parole until such person has served eighty-five per cent of the definite sentence imposed by the court. Such regulations shall include guidelines and procedures for classifying a person as a violent offender that are not limited to a consideration of the elements of the offense or offenses for which such person was convicted. . . ."

References hereinafter to § 54-125a are to the 2001 revision, as amended by Public Acts, Spec. Sess., June, 2001, No. 01-9.

[8] At the time of filing his second amended petition for a writ of habeas corpus on September 22, 2003, the petitioner also was serving a five year sentence for violation of probation under General Statutes § 53a-32. That sentence is not at issue in this appeal.

tion in so classifying him. The respondents further claimed that the habeas court lacked subject matter jurisdiction over the petition because the petitioner's parole eligibility, his demand for a parole hearing and his interest in parole consideration did not implicate a recognized liberty interest sufficient to invoke habeas jurisdiction under the laws of this state.

The habeas court, *Fuger, J.*, agreed with the respondents that it lacked jurisdiction over the habeas petition because, unlike the liberty interest at stake when a petitioner alleges that his detention is illegal, the petitioner in the present case did not have a cognizable liberty interest in his parole eligibility status. Despite its determination that it lacked subject matter jurisdiction, the habeas court discussed the merits of the petitioner's claims. Although the court recognized that narcotics violations generally are nonviolent offenses, it noted that, in classifying the petitioner under § 54-125a, the board was not limited to considering only the offenses underlying the sentence the petitioner currently was serving. The court noted that, under § 54-125a, the board could consider any information it deemed relevant in making this assessment. The habeas court also rejected the claimed ex post facto violation in the application of § 54-125a (b) (2) on the ground that the offense for which the petitioner had been classified as a violent offender and the attendant imposition of his sentence occurred after the enactment of that provision. Accordingly, the habeas court dismissed the habeas petition.

Thereafter, the petitioner filed a petition for certification to appeal to the Appellate Court, which the habeas court granted, raising the jurisdiction and ex post facto issues. The Appellate Court reversed the judgment of the trial court, holding that "although an inmate has no right to parole release, he has a liberty interest in parole eligible status." *Baker* v. *Commissioner of Correction*, 91 Conn. App. 855, 862, 882 A.2d 1238 (2005). The court

concluded that prior case law implicitly had recognized such a liberty interest. Id., 862–63, citing *Johnson* v. *Commissioner of Correction*, 258 Conn. 804, 818–19, 786 A.2d 1091 (2002). The court reasoned that this conclusion was supported by the statutory scheme because, "[r]ead together, subsections (a) and (b) [of § 54-125a] clearly vest a liberty interest in parole eligible status to all persons described in subsection (a), subject to the exclusion for the enumerated offenses and the 85 percent limitation embodied in subsection (b)." *Baker* v. *Commissioner of Correction*, supra, 863–64. In light of the Appellate Court's conclusion that the habeas court improperly had dismissed the petition for lack of jurisdiction, the court did not reach the petitioner's ex post facto claim. The Appellate Court thus remanded the case for further proceedings. The certified appeal to this court followed.[9]

We conclude that, contrary to the Appellate Court's reading of the statutory scheme and case law regarding this issue, the petitioner does not have a cognizable liberty interest in parole eligibility status. Thus, the Appellate Court improperly concluded that the habeas court had jurisdiction to entertain the petitioner's claim.

Initially, we set forth the appropriate standard of review. "We have long held that because [a] determination regarding a trial court's subject matter jurisdiction is a question of law, our review is plenary. . . . Subject

---

[9] We granted the respondents' petition for certification to appeal to this court limited to the following issue: "Did the Appellate Court properly conclude that the petitioner's claimed liberty interest in parole eligibility status was sufficient to invoke the habeas court's subject matter jurisdiction?" *Baker* v. *Commissioner of Correction*, 276 Conn. 927, 889 A.2d 816 (2005). We note that, because the Appellate Court did not reach the petitioner's ex post facto claim, that claim is not before this court, and the petitioner expressly waived that claim at oral argument before this court. Thus, we do not address whether the board properly may have considered the petitioner's 1991 and 1995 convictions when classifying his eligibility for parole for his 2001 conviction.

matter jurisdiction involves the authority of the court to adjudicate the type of controversy presented by the action before it. . . . [A] court lacks discretion to consider the merits of a case over which it is without jurisdiction . . . . [W]here the court rendering the judgment lacks jurisdiction of the subject matter the judgment itself is void. . . . Indeed, [i]t is axiomatic that once the issue of subject matter jurisdiction is raised, it must be immediately acted upon by the court." (Citations omitted; internal quotation marks omitted.) *Ajadi* v. *Commissioner of Correction*, 280 Conn. 514, 532–33, 911 A.2d 712 (2006).

The Supreme Court of the United States has held that, "[i]t is clear . . . that the essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and that the traditional function of the writ is to secure release from illegal custody." *Preiser* v. *Rodriguez*, 411 U.S. 475, 484, 93 S. Ct. 1827, 36 L. Ed. 2d 439 (1973), overruled in part on other grounds by *Heck* v. *Humphrey*, 512 U.S. 477, 481–82, 114 S. Ct. 2364, 129 L. Ed. 2d 383 (1994). "The original view of a habeas corpus attack upon detention under a judicial order was a limited one. The relevant inquiry was confined to determining simply whether or not the committing court had been possessed of jurisdiction. . . . But, over the years, the writ of habeas corpus evolved as a remedy available to effect discharge from any confinement contrary to the [c]onstitution or fundamental law, even though imposed pursuant to conviction by a court of competent jurisdiction. . . . Thus, whether the petitioner's challenge to his custody is that the statute under which he stands convicted is unconstitutional . . . that he has been imprisoned prior to trial on account of a defective indictment against him . . . that he is unlawfully confined in the wrong institution . . . that he was denied his constitutional rights at trial . . . that he is being unlawfully detained by the [e]xecutive or

the military . . . or that his parole was unlawfully revoked, causing him to be reincarcerated in prison . . . in each case his grievance is that he is being unlawfully subjected to physical restraint, and in each case habeas corpus has been accepted as the specific instrument to obtain release from such confinement." (Citations omitted.) *Preiser* v. *Rodriguez*, supra, 485–86.

The *Preiser* court went on to explain the expansion of the utilization of habeas corpus to challenge illegal confinement, even when the remedy would not be immediate release. "[R]ecent cases have established that habeas corpus relief is not limited to immediate release from illegal custody, but that the writ is available as well to attack future confinement and obtain future releases. In *Peyton* v. *Rowe*, 391 U.S. 54 [66–67, 88 S. Ct. 1549, 20 L. Ed. 2d 426] (1968), the [c]ourt held that a prisoner may attack on habeas the second of two consecutive sentences while still serving the first. The [c]ourt pointed out that the federal habeas corpus statute does not deny the federal courts power to fashion appropriate relief other than immediate release. Since 1874, the habeas corpus statute has directed the courts to determine the facts and dispose of the case summarily, as law and justice require." (Internal quotation marks omitted.) *Preiser* v. *Rodriguez*, supra, 411 U.S. 487.

Likewise, this court has expanded the application of habeas corpus, describing it as "available as a remedy for a miscarriage of justice or other prejudice. . . . [S]ee *Delevieleuse* v. *Manson*, 184 Conn. 434, 439 A.2d 1055 (1981) (review through a petition for habeas corpus the statutory right to appropriate jail credit). As this court stated in *Bunkley* v. *Commissioner of Correction*, 222 Conn. 444, 460–61, 610 A.2d 598 (1992), the principal purpose of the writ of habeas corpus is to serve as a bulwark against convictions that violate fundamental fairness. . . . To mount a successful collateral attack

on his conviction a prisoner must demonstrate a miscarriage of justice or other prejudice and not merely an error which might entitle him to relief on appeal. . . . [I]n *Safford* v. *Warden,* 223 Conn. 180, 191 n.13, 612 A.2d 1161 (1992) . . . [this court] recognized that the great writ of liberty is not a remedy for constitutional violations exclusively, albeit most cases in which the remedy has been applied involve issues of fundamental fairness that implicate constitutional rights." (Citations omitted; internal quotation marks omitted.) *Lozada* v. *Warden,* 223 Conn. 834, 840, 613 A.2d 818 (1992). "[Thus the] writ of habeas corpus, as it is employed in the twentieth century . . . does not focus solely upon a direct attack on the underlying judgment or upon release from confinement. See, e.g., *Gaines* v. *Manson,* 194 Conn. 510, 481 A.2d 1084 (1984) (undue appellate delay); *Arey* v. *Warden,* 187 Conn. 324, 445 A.2d 916 (1982) (conditions of confinement); *Roque* v. *Warden,* 181 Conn. 85, 434 A.2d 348 (1980) (first amendment issues); *Negron* v. *Warden,* 180 Conn. 153, 429 A.2d 841 (1980) (state's extradition practice); *Doe* v. *Doe,* 163 Conn. 340, 307 A.2d 166 (1972) (custody and visitation disputes)." (Citations omitted; internal quotation marks omitted.) *Lozada* v. *Warden,* supra, 841–42. Nonetheless, despite this expansion of the writ beyond its initial objective of securing immediate release from illegal detention, in order to invoke successfully the jurisdiction of the habeas court, a petitioner must allege "an interest sufficient to give rise to habeas relief." (Internal quotation marks omitted.) *Johnson* v. *Commissioner of Correction,* supra, 258 Conn. 815.

In the present case, the petitioner has claimed that, under § 54-125a, he has a statutorily created liberty interest in parole eligibility status after serving one half of his sentence. He further has claimed that "[f]ederal and Connecticut law support the Appellate Court's use of the term 'liberty interest' to characterize an inmate's

interest in an accurately calculated parole eligibility date," and that "parole eligibility is an integral part of the criminal sentence in Connecticut." We disagree.

The petitioner seeks to invoke habeas jurisdiction based on this alleged liberty interest, in other words, "a liberty interest protected by the [d]ue [p]rocess [c]lause of the [f]ourteenth [a]mendment[10] which may not be terminated absent appropriate due process safeguards." *Moody* v. *Daggett*, 429 U.S. 78, 85–86, 97 S. Ct. 274, 50 L. Ed. 2d 236 (1976). "In order . . . to qualify as a constitutionally protected 'liberty,' [however] the interest must be one that is *assured* either by statute, judicial decree, or regulation." (Emphasis added.) *Wheway* v. *Warden*, 215 Conn. 418, 432, 576 A.2d 494 (1990), citing *Wolff* v. *McDonnell*, 418 U.S. 539, 558, 94 S. Ct. 2963, 41 L. Ed. 2d 935 (1974) ("[A] person's liberty is equally protected, even when the liberty itself is a statutory creation of the [s]tate. The touchstone of due process is protection of the individual against arbitrary action of government . . . ." [Citation omitted.]).

In denying an inmate's due process claim based on a state's prisoner transfer procedure, the United States Supreme Court has explained: "The [d]ue [p]rocess [c]lause by its own force forbids the [s]tate from convicting any person of crime and depriving him of his liberty without complying fully with the requirements of the [c]lause. But given a valid conviction, the criminal defendant has been constitutionally deprived of his liberty to the extent that the [s]tate may confine him and subject him to the rules of its prison system so long as the conditions of confinement do not otherwise violate the [c]onstitution. . . . [T]o hold . . . that *any* substantial deprivation imposed by prison authorities trig-

---

[10] Section 1 of the fourteenth amendment to the United States constitution provides in relevant part: "No State shall . . . deprive any person of life, liberty or property, without due process of law . . . ."

gers the procedural protections of the [d]ue [p]rocess [c]lause would subject to judicial review a wide spectrum of discretionary actions that traditionally have been the business of prison administrators rather than of the federal courts." (Citation omitted; emphasis in original.) *Meachum* v. *Fano*, 427 U.S. 215, 224–25, 96 S. Ct. 2532, 49 L. Ed. 2d 451 (1976). "[T]o determine whether due process requirements apply in the first place, we must look not to the 'weight' but to the nature of the interest at stake." *Board of Regents of State Colleges* v. *Roth*, 408 U.S. 564, 570–71, 92 S. Ct. 2701, 33 L. Ed. 2d 548 (1972).

The Supreme Court has recognized that, "[t]here is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence. . . . A state may . . . establish a parole system, but it has no duty to do so." (Citations omitted.) *Greenholtz* v. *Inmates of the Nebraska Penal & Correctional Complex*, 442 U.S. 1, 7, 99 S. Ct. 2100, 60 L. Ed. 2d 668 (1979). Accordingly, whether and to what extent a state creates a liberty interest in parole by state statute is entirely at the discretion of the state. Thus, in *Greenholtz*, the Supreme Court held that mandatory language in Nebraska's parole statute created an interest in expectancy of release that was entitled to a measure of constitutional protection. Id., 12. The court emphasized the statute's unique structure and language that created this interest, and noted that, "whether any other state statute provides a protectible entitlement must be decided on a case-by-case basis." Id.; see also *Board of Pardons* v. *Allen*, 482 U.S. 369, 378 n.10, 107 S. Ct. 2415, 96 L. Ed. 2d 303 (1987) (similarly concluding that mandatory language gave rise to cognizable liberty interest).

Thus, in order to determine whether Connecticut's parole eligibility statutes confer a liberty interest on the petitioner, we turn to the statutory scheme created

by the legislature and regulating agencies and its interpretation by our courts.[11] "When the question of law involves statutory interpretation, that determination is guided by well settled principles. We have previously stated that in construing statutes, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In seeking to discern that intent, we look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter." (Internal quotation marks omitted.) *Unkelbach* v. *McNary*, 244 Conn. 350, 357, 710 A.2d 717 (1998). "In seeking to determine [the] meaning [of a statute], General Statutes § 1-2z directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered." (Internal quotation marks omitted.) *Stone-Krete Construction, Inc.* v. *Eder*, 280 Conn. 672, 677, 911 A.2d 300 (2006).

We begin with the text of § 54-125a. Subsection (a), which the petitioner claims gives rise to his liberty interest in being considered eligible for parole after serving 50 percent of his sentence, provides in relevant part: "A person convicted of one or more crimes who is incarcerated on or after October 1, 1990, who received a definite sentence or aggregate sentence of more than two years, and who has been confined under such sen-

---

[11] We look not only to the General Statutes, but also to the Regulations of the Connecticut State Agencies for determining parole eligibility, enacted pursuant to the board's authority under § 54-125a (c). The Supreme Court and federal Courts of Appeals have noted specifically the "relevance of regulations to a determination of whether a certain scheme gives rise to a liberty interest." *Board of Pardons* v. *Allen*, supra, 482 U.S. 378 n.9.

tence or sentences for not less than one-half of the aggregate sentence or one-half of the most recent sentence imposed by the court, whichever is greater, *may* be allowed to go at large on parole *in the discretion of the panel of the Board* . . . . for the institution in which the person is confined, *if* (1) it appears from all available information, including any reports from the Commissioner of Correction that the panel may require, that there is reasonable probability that such inmate will live and remain at liberty without violating the law, *and* (2) such release is not incompatible with the welfare of society. . . ." (Emphasis added.) General Statutes (Rev. to 2001) § 54-125a (a), as amended by Public Acts, Spec. Sess., June, 2001, No. 01-9, § 74. We see nothing in this text that affirmatively grants *any* inmate the right to parole eligibility after serving one half of his or her sentence. In contrast, subsection (b) of the statute instructs that an inmate deemed to be a violent offender by the board "*shall* be ineligible for parole under subsection (a) of this section until such person has served not less than eighty-five per cent of the definite sentence imposed." (Emphasis added.) General Statutes (Rev. to 2001) § 54-125a (b) (2), as amended by Public Acts, Spec. Sess., June, 2001, No. 01-9, § 74. Thus, the only mandatory language in these provisions is that in subsection (b) *preventing* the board from considering violent offenders for parole before they have served 85 percent of their sentences. See *Taylor* v. *Robinson*, 171 Conn. 691, 697–98, 372 A.2d 102 (1976) ("[t]he only statutory limits upon the discretion of the board of parole are the requirement that the inmate serve his minimum sentence, that it appear that the inmate will remain at liberty without violating the law, and that the release of the inmate not be incompatible with the welfare of society"). Moreover, the broad, discretionary nature of the board's authority in classifying offenders is underscored in subsection (c), under

which the board is instructed expressly that its regulations for determining violent offender status "shall include guidelines and procedures for classifying a person as a violent offender that are not limited to a consideration of the elements of the offense or offenses for which such person was convicted." General Statutes (Rev. to 2001) § 54-125a (c), as amended by Public Acts, Spec. Sess., June, 2001, No. 01-9, § 74. Accordingly, we see no indication in § 54-125a that the legislature intended to assure an inmate's parole eligibility status upon serving 50 percent of his or her sentence.[12] Indeed, numerous Courts of Appeals have concluded that similar permissive language in parole statutes did not give rise to a liberty interest.[13]

This court has recognized that "in *Greenholtz* v. *Inmates of the Nebraska Penal & Correctional Com-*

---

[12] In fact, in Public Acts 2004, No. 04-234, § 3, the legislature for the first time explicitly required that the board conduct parole suitability hearings. Notably, however, for inmates not deemed violent offenders under § 54-125a (b) who may be eligible for parole under § 54-125a (a) after serving 50 percent of their sentences, the board is required to hold a hearing only when such inmates have served 75 percent of their sentences, *not* upon completion of 50 percent of the sentence. See General Statutes § 54-125a (d). For inmates deemed violent offenders under subsection (b), the board is required to hold parole hearings upon completion of 85 percent of their sentences. See General Statutes § 54-125a (e).

[13] In *Board of Pardons* v. *Allen*, supra, 482 U.S. 378–79 n.10, the Supreme Court noted that the circuit courts had held that, "statutes or regulations that provide that a parole board 'may' release an inmate on parole do not give rise to a protected liberty interest. See *Dace* v. *Mickelson*, [816 F.2d 1277 (8th Cir. 1987)] (South Dakota statute); *Parker* v. *Corrothers*, [750 F.2d 653, 657 (8th Cir. 1984)] (Arkansas statute); *Gale* v. *Moore*, 763 F.2d 341, 343 ([8th Cir.] 1985) (amended Missouri statute); *Dock* v. *Latimer*, 729 F.2d 1287, 1288 ([10th Cir.] 1984) (Utah statute); *Irving* v. *Thigpen*, 732 F.2d 1215, 1216 ([5th Cir.] 1984) (Mississippi statute); *Candelaria* v. *Griffin*, 641 F.2d 868, 869 ([10th Cir.] 1981) (New Mexico statute); *Williams* v. *Briscoe*, 641 F.2d 274, 276 ([5th Cir.]) (Texas statute), cert. denied, 454 U.S. 854 [102 S. Ct. 299, 70 L. Ed. 2d 147] (1981); *Schuemann* v. *Colorado State Board of Adult Parole*, 624 F.2d 172, 174 ([10th Cir.] 1980) (Colorado statute); *Shirley* v. *Chestnut*, 603 F.2d 805, 806–807 ([10th Cir.] 1979) (Oklahoma statute); *Wagner* v. *Gilligan*, 609 F.2d 866, 867 ([6th Cir.] 1979) (Ohio statute)."

*plex*, [supra, 442 U.S. 11–12], and *Board of Pardons* v. *Allen*, [supra, 482 U.S. 377, 381] . . . the United States Supreme Court held that the mandatory language in the parole statutes under review, both of which provided that a prisoner 'shall' be released under certain conditions, gave rise to constitutionally protected liberty interests in parole release." *Johnson* v. *Commissioner of Correction*, supra, 258 Conn. 816. Section 54-125a, however, contains no such mandatory language. Rather, the decision to grant parole is entirely within the discretion of the board. Indeed, this court squarely has held that, "[t]here is no statutory requirement that the panel [of the board] actually consider the eligibility of any inmate for parole, the statute does not vest an inmate with the right to demand parole, and there is no statutory provision which even permits an inmate to apply for parole. . . . For even if the inmate has complied with the minimum requirements of [the parole statute], the statute does not require the board to determine his eligibility for parole." (Citations omitted.) *Taylor* v. *Robinson*, supra, 171 Conn. 697–98.

In addition, the regulations promulgated by the board pursuant to § 54-125a (c) do not in any way limit its discretion in parole eligibility decisions.[14] Although

[14] See generally Regs., Conn. State Agencies §§ 54-125a-1 through 54-125a-6, effective May 2, 1997, enacted pursuant to § 54-125a (c). In particular, § 54-125a-2 of the Regulations of Connecticut State Agencies provides: "Application

"Sections 54-125a-1, 54-125a-2, 54-125a-3, 54-125a-4, 54-125a-5 and 54-125a-6 shall apply to inmates who, on or after July 1, 1996, are convicted of an offense for which parole is authorized."

Section 54-125a-3 of the Regulations of Connecticut State Agencies provides: "Procedure

"(a) The Board shall make a determination whether the inmate is ineligible for parole until he or she has served not less than 85 [percent] of his or her definite sentence or sentences, pursuant to section 54-125a of the general statutes, as amended by public act 95-255. If such determination is in the affirmative, the board shall notify the inmate of his or her earliest parole eligibility date based upon serving not less than 85 [percent] of his or her definite sentence or sentences. The Board shall also notify the Department of Correction of all such determinations.

there is mandatory language in the regulations requiring

"(b) The Board . . . shall make a determination of an inmate's earliest parole eligibility date. The Board, in making such determination, shall obtain, on a weekly basis, a list of all inmates sentenced within the previous week. A criminal history of the inmate, will be obtained which may include, but shall not be limited to, a State Police criminal records check, out of state criminal records check, police reports, previous parole and probation reports, and any other information that the Board deems relevant. Criminal justice data systems will be queried for information regarding the length of sentence for each specific charge. The Chairman of the Board . . . shall convene a panel of two or more parole board members to review the information compiled. The panel will determine whether the inmate must serve 50 [percent] or 85 [percent] of his or her sentence before becoming eligible for Parole. The inmate and the Department of Correction will then be notified of the Board's determination."

Section 54-125a-4 of the Regulations of Connecticut State Agencies provides: "Criteria

"(a) The board shall determine whether the statutory definition of the offense or any offenses for which an inmate is serving a sentence of imprisonment contains one or more elements which involve the use, attempted use or the threatened use of physical force against another person. Such inmates shall be ineligible for parole until they shall have served not less than 85 [percent] of their definite sentences pursuant to section 54-125a of the general statutes, as amended by public act 95-255.

"(b) In all other cases, the board shall determine whether the underlying act or acts constituting the offense or any offense for which the inmate is serving a sentence of imprisonment, or any other relevant information, demonstrate that the inmate is a violent offender. Not less than thirty days prior to making such determination, the board shall notify the division of criminal justice, and shall consider all information and comment provided by that agency. If the board determines that an inmate meets such criteria, the inmate shall be ineligible for parole until he or she has served not less than 85 [percent] of his or her definite sentence or sentences pursuant to section 54-125a of the general statutes, as amended by public act 95-255.

"(c) In classifying inmates under subsections (a) and (b) of this section, the board may consider any information which it deems to be relevant."

Section 54-125a-5 of the Regulations of Connecticut State Agencies provides: "Guidelines

"(a) The Board shall determine whether the statutory definition of the offense or any offenses for which an inmate was convicted of or is serving a sentence of imprisonment contains one or more elements which involve the use, attempted use or threatened use of physical force against another person. No such inmate shall become parole eligible until he or she has served not less than 85 [percent] of his or her definite sentence pursuant to the general statutes listed. The following Connecticut General Statutes are applicable to an inmate's 85 [percent] determination: 53a-55, 53a-55a,

that the board assign each inmate violent or nonviolent offender status, determine an inmate's earliest parole eligibility date based on that status and notify the inmate of that status, there is no limit on the board's discretion in making the initial, substantive determination of classification. Indeed, "[i]n classifying inmates under subsections (a) and (b) of this section, the board may consider any information which it deems to be relevant." Regs., Conn. State Agencies § 54-125a-4 (c). "Information may include, but not be limited to, presentence reports, State Police criminal records check, sentencing dockets, Criminal Justice Information System information, police reports, out of state criminal records, parole and probation reports, victim(s) statement, witness statements, [and] inmates prior incarceration history. After reviewing this information, the panel will determine whether the inmate has a past history

53a-56, 53a-56a, 53a-56b, 53a-57, 53a-59, 53a-59a, 53a-60, 53a-60a, 53a-60b, 53a-60c, 53a-70, 53a-70a, 53a-70b, 53a-72b, 53a-92, 53a-92a, 53a-94, 53a-94a, 53a-95, 53a-101, 53a-102a, 53a-103a, 53a-111, 53a-112, 53a-134, 53a-135, 53a-136, 53a-167c, 53a-179b, 53a-179c, 53a-181c.

"(b) In all other cases, the Board shall consider the underlying act or acts constituting the offense or any offense for which the inmate is serving a sentence of imprisonment or any other relevant information that demonstrates a tendency toward the use, attempted use or threatened use of physical force against another person. Information may include, but not be limited to, presentence reports, State Police criminal records check, sentencing dockets, Criminal Justice Information System information, police reports, out of state criminal records, parole and probation reports, victim(s) statement, witness statements, inmates prior incarceration history. After reviewing this information, the panel will determine whether the inmate has a past history and/or a series or a pattern of convictions for an offense or offenses described in subsection (a) of these guidelines."

Section 54-125a-6 of the Regulations of Connecticut State Agencies provides: "Effect

"Decisions of the Board under sections 54-125a-1 to 54-125a-6, inclusive, of the Regulations of Connecticut State Agencies shall be limited solely to the determination of inmates' earliest parole eligibility dates pursuant to section 54-125a of the general statutes, as amended by public act 95-255, and shall not be relevant in proceedings to determine whether an inmate should be granted parole on that or subsequent dates, nor to any other parole matter."

and/or a series or a pattern of convictions for an offense or offenses described in subsection (a) of these guidelines." Regs., Conn. State Agencies § 54-125a-5 (b). Accordingly, the board merely was exercising its discretionary, delegated power in classifying the petitioner in the present case.

The petitioner's claim that parole eligibility is an integral part of a criminal sentence is likewise unavailing. This court has held explicitly that the parole eligibility statute "is not within the terms of the sentence imposed." *State* v. *Faria*, 254 Conn. 613, 627, 758 A.2d 348 (2000). Further undermining the petitioner's claim is our holding that "due process does not require a trial court to advise the defendant of his statutory parole ineligibility during a plea canvass. We recognize . . . that statutory parole ineligibility affects the amount of time that the defendant actually will spend in prison, and, unlike parole eligibility, is neither complex nor dependent on the discretion of the parole board. It does not follow, however, that statutory parole ineligibility is covered by the . . . constitutional mandate." *State* v. *Andrews*, 253 Conn. 497, 512–13, 752 A.2d 49 (2000); accord *Hill* v. *Lockhart*, 474 U.S. 52, 56, 106 S. Ct. 366, 88 L. Ed. 2d 203 (1985) ("[w]e have never held that the United States [c]onstitution requires the [s]tate to furnish a defendant with information about parole eligibility in order for the defendant's plea of guilty to be voluntary, and indeed such a constitutional requirement would be inconsistent with the current rules of procedure governing the entry of guilty pleas in the federal courts").

Finally, we note that our conclusion is in accord with prior decisions by Connecticut courts that have considered § 54-125a. In *Johnson* v. *Commissioner of Correction*, supra, 258 Conn. 808, 818–19, this court concluded that the habeas court had jurisdiction to consider the petitioner's ex post facto challenge to the

board's parole eligibility calculation for his sentence based on its retroactive application of § 54-125a (b) (2) and (c). We distinguished the petition in *Johnson* from that in *Vincenzo* v. *Warden*, 26 Conn. App. 132, 142, 599 A.2d 31 (1991), wherein the Appellate Court had concluded that the habeas court lacked jurisdiction over a due process challenge to the predecessor to § 54-125a (then § 54-125), because the broad discretion vested in the board to determine whether to consider an inmate's parole suitability under the statute did not give rise to a cognizable liberty interest. *Johnson* v. *Commissioner of Correction*, supra, 816–17. This court explained that, "[u]nlike [the petitioner in *Vincenzo*], however, the petitioner in [*Johnson*] is claiming a violation of his rights under the ex post facto clause as opposed to the due process clause. The United States Supreme Court has recognized that a law need not impair a vested right to violate the ex post facto prohibition. Evaluating whether a right has vested is important for claims under the . . . [d]ue [p]rocess [clause], which solely protect[s] pre-existing entitlements." (Internal quotation marks omitted.) Id., 817, quoting *Weaver* v. *Graham*, 450 U.S. 24, 29–30, 101 S. Ct. 960, 67 L. Ed. 2d 17 (1981). Thus, because a vested right was not required for the court to consider the petitioner's ex post facto claim in *Johnson*, we declined to decide the jurisdictional basis for a due process claim considered by the Appellate Court in *Vincenzo*. *Johnson* v. *Commissioner of Correction*, supra, 817 n.13. Although *Vincenzo* addressed the nature of the inmate's interest in the determination of suitability for parole release at a parole hearing rather than the determination of eligibility for a parole hearing, the Appellate Court's reasoning in that case as to the parole statute's grant of broad discretion to the board applies with equal force to the present case. Accordingly, we conclude that parole eligibility under § 54-125a does not constitute a

cognizable liberty interest sufficient to invoke habeas jurisdiction.

The judgment of the Appellate Court is reversed and the case is remanded to that court with direction to affirm the judgment of the trial court.

In this opinion the other justices concurred.