******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# HOWARD BYRD *v.* COMMISSIONER OF CORRECTION
## (AC 38491)

Lavine, Mullins and West, Js.

*Syllabus*

The petitioner sought a writ of habeas corpus, claiming, inter alia, that an ex post facto law passed after he was sentenced improperly invalidated the application of risk reduction credits toward his parole eligibility date. Following cross motions for summary judgment filed by the parties, the habeas court rendered judgment dismissing the petition and, thereafter, denied the petition for certification to appeal, and the petitioner appealed to this court. He claimed that the habeas court abused its discretion in denying his petition for certification to appeal because it committed a number of procedural errors in rendering its decision and improperly concluded that it lacked subject matter jurisdiction over the petition. *Held*:

1. The habeas court properly dismissed count one of the petition for a writ of habeas corpus, which alleged the improper application of an ex post facto law, for lack of subject matter jurisdiction: the petitioner made no claim that legislation regarding eligibility for parole consideration became more onerous after the date of his criminal behavior, but rather claimed that new legislation enacted in 2011, one year after his criminal conduct, conferred a benefit on him that was taken away in 2013, which did not implicate the ex post facto prohibition because the changes that occurred between 2011 and 2013 had no bearing on the punishment to which the petitioner's criminal conduct exposed him when he committed the crime for which he was convicted in 2010; accordingly, the habeas court did not abuse its discretion in denying the petition for certification to appeal as to count one.

2. The habeas court properly dismissed count two of the habeas petition, in which the petitioner alleged that he suffered from a heart condition and that, due to the stress of litigating count one, he was entitled to additional credits and conditional medical parole: parole eligibility under statute (§ 54-125a) does not constitute a cognizable liberty interest sufficient to invoke habeas jurisdiction, the claim in count two was wholly dependent on count one, over which this court lacked subject matter jurisdiction, and it was unclear what relief was sought in count two by the petitioner, who asked the court for medical compensation and an early release due to his failing health, but did not assert that he was illegally confined or that he had been wrongly deprived of his liberty; accordingly, the habeas court properly determined that it lacked subject matter jurisdiction over count two and did not abuse its discretion in denying the petition for certification to appeal as to that count.

Argued May 24—officially released October 10, 2017

*Procedural History*

Amended petition for a writ of habeas corpus, brought to the Superior Court in the judicial district of Tolland, where the court, *Fuger, J.*, denied the petitioner's motion for summary judgment, and granted the respondent's motion for summary judgment and rendered judgment dismissing the habeas petition; thereafter, the court denied the petition for certification to appeal, and the petitioner appealed to this court; subsequently, the court issued an articulation of its decision. *Dismissed.*

*Temmy Ann Miller*, assigned counsel, for the appellant (petitioner).

*Madeline A. Melchionne*, assistant attorney general, with whom, on the brief, were *George Jepsen*, attorney general, and *Terrence O'Neill*, assistant attorney general, for the appellee (respondent).

*Opinion*

LAVINE, J. The petitioner, Howard Byrd, appeals following the denial of his petition for certification to appeal from the judgment of the habeas court dismissing his second amended petition for a writ of habeas corpus (petition).[1] He asserts a number of claims on appeal, but his primary claim is that the habeas court improperly concluded that it did not have subject matter jurisdiction over his ex post facto claim alleged in count one of his petition. We conclude that the habeas court properly determined that it lacked subject matter jurisdiction over both counts of his petition[2] and, therefore, did not abuse its discretion by denying the petitioner's petition for certification to appeal.[3] Accordingly, we dismiss the appeal.[4]

The facts and procedural history of this case present us with a tangled web of litigation. On September 13, 2010, the petitioner was arrested and was held in pre-sentence confinement by the respondent, the Commissioner of Correction, for a crime that took place on that same day. On January 27, 2012, he pleaded guilty to burglary in the first degree in violation of General Statutes § 53a-101 (a) (1), and the trial court, *Kavanewsky, J.*, sentenced him to eight years imprisonment, five years of which was mandatory, followed by eight years of special parole.

In 2010, the year in which the petitioner committed the criminal act underlying his conviction, there was no statutory provision that permitted inmates to earn "good time credits" to reduce the length of their sentences. In addition, due to the violent nature of the offense for which he was convicted, the petitioner was not eligible for parole consideration before serving 85 percent of his sentence. See General Statutes (Rev. to 2013) § 54-125a (b).

In 2011, after the petitioner committed the criminal act but before he was sentenced, the General Assembly passed Number 11-51 of the 2011 Public Acts (P.A. 11-51), codified at General Statutes § 18-98e. Section 18-98e (a) provides that certain inmates who were convicted of crimes committed after October 1, 1994, "may be eligible to earn risk reduction credit toward a reduction of such person's sentence, in an amount not to exceed five days per month, at the discretion of the Commissioner of Correction . . . ." At the same time, the General Assembly amended § 54-125a (b), providing that a person convicted of a violent crime would not be eligible for parole consideration "until such person has served not less than [85 percent] of the definite sentence imposed *less any risk reduction credit earned* under the provisions of [section 18-98e]." (Emphasis added.) P.A. 11-51, § 25.

Thus, when the petitioner was sentenced in 2012, he was entitled to earn and be awarded, within the

discretion of the respondent, risk reduction credits that would reduce the length of his sentence *and also* advance the date of his first eligibility for parole consideration. See *Petaway* v. *Commissioner of Correction*, 160 Conn. App. 727, 730, 125 A.3d 1053 (2015), appeal dismissed, 324 Conn. 912, 153 A.3d 1288 (2017). In fact, the respondent credited the petitioner with risk reduction credits for each month that he was eligible to earn such credits.

In 2013, however, the General Assembly again amended § 54-125a (b) by removing the phrase "less any risk reduction credit earned under the provisions of section 18-98e." See Pubic Acts 2013, No. 13-3, § 59. The 2013 version, which is in effect today, requires inmates who were convicted of a violent offense to serve 85 percent of their sentences before they become eligible for parole consideration. In the present case, therefore, the petitioner may earn and be awarded risk reduction credits, but such credits can no longer be used to advance the date on which he is eligible to be considered for parole. Notably, the petitioner has not lost any risk reduction credits he has earned, and he may still reduce the total length of his sentence of incarceration.

On August 7, 2014, the petitioner, self-represented, filed the operative petition. In count one, he alleged that even though the 2013 version of § 54-125a (b) prevents "risk reduction earned credit(s) to be applied toward parole eligibility dates, his sentence . . . must be [commutated] under [the 2011 version of § 54-125a (b)], as that was the enforceable law at the time he became sentenced." In count two, he alleged that he suffered from a heart disease and that "[d]ue to [the] . . . stress . . . [stemming] from the petitioner having to struggle with his disease and litigation . . . [t]he petitioner not only seeks the return of all [risk reduction credits] to be properly calculated toward his parole eligibility date but . . . respectfully moves this court to grant relief [and] remedy by the granting of additional credits, and conditional medical parole."

On August 11, 2014, before the respondent responded to the petitioner's petition, the petitioner filed a motion for summary judgment.[5] In the motion, he alleged that (1) there was no issue of material fact that his "claim is entirely based on the language of the sovereign law that was in effect at the time [he] became sentenced," (2) there was no issue of material fact that he was "entitled to have all 'earned risk reduction credits' be applied toward [his] parole eligibility," and (3) "[a]s the new law was passed after [he] was sentenced," applying the 2013 version of § 54-125a (b) to him violated "Article I, section 10 of the United States Constitution . . . ."

On November 3, 2014, the respondent filed a cross motion for summary judgment. In his motion, he argued that the respondent was entitled to a judgment as a

matter of law because "there exists no constitutional right to receive [risk reduction credits] or to have these credits applied to reduce an inmate's parole eligibility date . . . [and] there exists no constitutional right to parole." The respondent also filed a memorandum of law in support of his motion for summary judgment, in which he relied heavily on the decision of the habeas court, *Kwak, J.*, in *Petaway* v. *Commissioner of Correction*, Superior Court, judicial district of Tolland, Docket No. CV-13-4005684 (April 7, 2014), aff'd, 160 Conn. App. 727, 125 A.3d 1053 (2015). The respondent attached Judge Kwak's order to his motion.[6]

On August 17, 2015, the habeas court, *Fuger, J.*, held a hearing to address both parties' motions for summary judgment. Following argument from both parties, the habeas court issued its oral decision. In ruling for the respondent, the habeas court wholly adopted and relied on Judge Kwak's reasoning in *Petaway*.

On August 24, 2015, the petitioner filed a petition for certification to appeal, which the habeas court denied. On April 27, 2016, the petitioner filed in this court a motion for permission to file a late motion for articulation of the habeas court's ruling. On May 25, 2016, this court denied the petitioner's motion but, sua sponte, ordered that the habeas court "articulate whether it intended to dismiss the petition . . . for lack of jurisdiction or whether it intended to render summary judgment in favor of the [respondent], and the factual and legal basis for the court's decision." In addition, this court, sua sponte, ordered the habeas court to "articulate whether it has disposed of the second count of the petitioner's . . . petition."

On June 21, 2016, the habeas court filed its articulation. It clarified that when it made its oral ruling on August 17, 2015, it intended to dismiss count one of the petition for lack of subject matter jurisdiction. It also stated that it disposed of count two for lack of subject matter jurisdiction because the petitioner failed to state a claim upon which relief could be granted.

On July 5, 2016, the petitioner filed in this court a motion for review of the habeas court's articulation. On July 19, 2016, this court granted the petitioner's motion for review but denied his relief requested. This appeal followed.

On appeal, the petitioner argues that the habeas court abused its discretion in denying his petition for certification to appeal because it committed a number of procedural errors in rendering its decision and improperly concluded that it lacked subject matter jurisdiction. Before we proceed on the merits of the petitioner's claims on appeal, however, it is the obligation of this court to first determine whether the habeas court abused its discretion by denying the petitioner's certification to appeal because it did not have subject matter

jurisdiction over the petitioner's petition.

"Faced with the habeas court's denial of certification to appeal . . . a petitioner's first burden is to demonstrate that the habeas court's ruling constituted an abuse of discretion. . . . A habeas appeal . . . warrants appellate review if the appellant can show: that the issues are debatable among jurists of reason; that a court could resolve the issues [in a different manner]; or that the questions are adequate to deserve encouragement to proceed further. . . .

"[B]ecause [a] determination regarding a trial court's subject matter jurisdiction is a question of law, our review is plenary." (Citations omitted; internal quotation marks omitted.) *Rodriguez* v. *Commissioner of Correction*, 159 Conn. App. 162, 164–65, 122 A.3d 709 (2015).

We will, therefore, conduct a plenary review of the petitioner's petition to determine whether the habeas court properly concluded that it lacked subject matter jurisdiction to consider the petition.

I

The petitioner argued in count one of his petition that the application of the 2013 version of § 54-125a (b) violated his constitutional right against ex post facto laws. In dismissing count one, the habeas court stated in relevant part: "This court explicitly adopted Judge Kwak's reasoning as articulated in his April 7, 2014 order, which the respondent attached as exhibit F to the motion for summary judgment. This court, upon reconsideration of the entire matter, articulates that it intended to dismiss the petition for lack of subject matter jurisdiction."[7]

"[F]or a law to violate the prohibition [against ex post facto laws], it must feature some change from the terms of a law in existence at the time of the criminal act. That feature is entirely sensible, as a core purpose in prohibiting ex post facto laws is to ensure fair notice to a person of the consequences of criminal behavior. . . . [L]aws that impose a greater punishment after the commission of a crime than annexed to the crime at the time of its commission run afoul of the ex post facto prohibition because such laws implicate the central concerns of the ex post facto clause: the lack of fair notice and governmental restraint when the legislature increases punishment beyond what was prescribed when the crime was consummated." (Internal quotation marks omitted.) *Petaway* v. *Commissioner of Correction*, supra, 160 Conn. App. 731–32. Thus, to determine whether a habeas court has subject matter jurisdiction over a petitioner's ex post facto claim, "[t]he controlling inquiry . . . [is] whether retroactive application of the change in [the] law create[s] a sufficient risk of increasing the measure of punishment attached to the covered crimes. . . . [A] habeas petitioner need only make a

colorable showing that the new law creates a genuine risk that he or she will be incarcerated longer under that new law than under the old law." (Citations omitted; internal quotation marks omitted.) *Johnson* v. *Commissioner of Correction*, 258 Conn. 804, 818, 786 A.2d 1091 (2002).

Just as in *Petaway*, the petitioner in the present case "makes no claim that legislation regarding eligibility for parole consideration became more onerous *after the date of his criminal behavior*. Rather, he claims that new legislation enacted in 2011, [a year] after his criminal conduct . . . conferred a benefit on him that was then taken away in 2013. Such a claim, however, does not implicate the ex post facto prohibition because the changes that occurred between 2011 and 2013 have no bearing on the punishment to which the petitioner's criminal conduct exposed him when he committed" the robbery in 2010. (Emphasis added.) *Petaway* v. *Commissioner of Correction*, supra, 160 Conn. App. 732.

We conclude that the habeas court properly concluded that it did not have subject matter jurisdiction over count one of the petitioner's petition. Therefore, we also conclude that the habeas court did not abuse its discretion in denying the petitioner's petition for certification to appeal count one.

II

The petitioner alleged in count two of his petition that he suffered from a heart condition, and due to the "stress" of litigating count one, he was entitled to additional credits and conditional medical parole. In dismissing count two, the habeas court stated in relevant part: "The court notes that count two does not really state a claim at all. Instead, the petitioner makes various allegations that his health has suffered as a result of his efforts in litigating his claims and not receiving the [risk reduction] credits he believes he is entitled to. At the beginning of count two the petitioner indicates that he is seeking compensatory relief, but later it becomes apparent that count two in reality is seeking an early release through the application of [risk reduction] credits, additional credits or the granting of medical parole. Count two does not allege that the petitioner's medical treatment somehow violates the Eighth Amendment's prohibition against cruel and unusual punishment. Therefore, count two fails to invoke a habeas court's subject matter jurisdiction . . . ."

"The principal purpose of the writ of habeas corpus is to serve as a bulwark against convictions that violate fundamental fairness. . . . [I]n order to invoke successfully the jurisdiction of the habeas court, a petitioner must allege an interest sufficient to give rise to habeas relief. . . . In order to invoke the trial court's subject matter jurisdiction in a habeas action, a petitioner must allege that he is illegally confined or has

been deprived of his liberty." (Internal quotation marks omitted.) *Anthony A.* v. *Commissioner of Correction*, 159 Conn. App. 226, 235, 122 A.3d 730 (2015), aff'd, 326 Conn. 668,    A.3d    (2017). "In order . . . to qualify as a constitutionally protected 'liberty' . . . the interest must be one that is *assured* either by statute, judicial decree, or regulation." (Emphasis in original; internal quotation marks omitted.) *Baker* v. *Commissioner of Correction*, 281 Conn. 241, 252, 914 A.2d 1034 (2007). Specifically, "parole eligibility under § 54-125a does not constitute a cognizable liberty interest sufficient to invoke habeas jurisdiction." Id., 261–62.

In the present case, it appears that count two is wholly dependent on the success of count one, and because we conclude that the habeas court properly concluded that it lacked subject matter jurisdiction over count one, it follows that count two must fail as well. Moreover, it is unclear what relief the petitioner sought in count two; it seems as though he asked the habeas court for medical compensation while simultaneously asking for an early release due to his failing health. What is clear, however, is that he did not assert that he was illegally confined or that he had been wrongly deprived of his liberty.

We conclude that the habeas court properly concluded that it lacked subject matter jurisdiction over count two. Therefore, we also conclude that the habeas court did not abuse its discretion in denying the petitioner's petition for certification to appeal count two.

Because the petitioner failed to allege a liberty interest sufficient to invoke the subject matter jurisdiction of the habeas court, we conclude that the habeas court properly dismissed his petition. Furthermore, we conclude that the habeas court did not abuse its discretion in denying the petitioner's petition for certification to appeal.

The appeal is dismissed.

In this opinion the other judges concurred.

[1] This appeal arises from the habeas court's oral decision issued following the August 17, 2015 hearing held for both the petitioner's motion for summary judgment and the respondent's cross motion for summary judgment. Both parties contend on appeal that the habeas court granted the respondent's motion for summary judgment at the hearing. Notwithstanding some confusion within the record, a review of the habeas court's subsequent articulation ordered by this court reveals that it did not rule on either party's motion for summary judgment but dismissed count one of the petition for lack of subject matter jurisdiction and count two for lack of subject matter jurisdiction and for failure to state a claim upon which habeas corpus relief could be granted. We conclude that because the court dismissed the case for lack of jurisdiction, it did not have the authority to rule on the merits of the respondent's motion. See *State* v. *Bozelko*, 154 Conn. App. 750, 766, 108 A.3d 262 (2015) ("[o]nce the court determined that it lacked subject matter jurisdiction, it had no authority to decide the case").

[2] In his petition, filed on August 7, 2014, the petitioner alleges two counts. Count one is labeled "Risk Reduction Earned Credit," and count two is labeled "Health Issue."

[3] The petitioner claims that the habeas court committed a number of procedural errors in rendering judgment in favor of the respondent in viola-

tion of his constitutional right to due process. In light of our conclusion that the habeas court lacked subject matter jurisdiction, we need not address these claims. See, e.g., *Arriaga* v. *Commissioner of Correction*, 120 Conn. App. 258, 265, 990 A.2d 910 (2010), appeal dismissed, 303 Conn. 698, 36 A.3d 224 (2012); *Gonzalez* v. *Commissioner of Correction*, 107 Conn. App. 507, 516, 946 A.2d 252, cert. denied, 289 Conn. 902, 957 A.2d 870 (2008).

[4] During oral argument before this court, counsel for the petitioner raised the issue of mootness because the Board of Pardons and Parole approved the petitioner for placement in a halfway house. This court ordered supplemental briefing on the issue of mootness. We conclude that this case falls within an exception to the mootness doctrine because the issue presented is capable of repetition, yet evades review. See, e.g., *In re Angel R.*, 157 Conn. App. 826, 835–7, 118 A.3d 117, cert. denied, 317 Conn. 923, 118 A.3d 549 (2015).

[5] The petitioner did not articulate whether the motion for summary judgment was directed at both counts of his petition or whether it was only for count one.

[6] In *Petaway*, the petitioner, who also was classified as a violent offender, alleged that "his parole eligibility date [was] illegal because it violate[d] the ex post facto clause of the constitution." *Petaway* v. *Commissioner of Correction*, supra, Superior Court, Docket No. CV-13-4005684, *1. Judge Kwak, "declined to issue the writ pursuant to Practice Book § 23-24a (1)" and because "[p]arole . . . is not a valid habeas claim." (Internal quotation marks omitted.) Id., *2. The petitioner filed a petition for certification to appeal, which Judge Kwak denied. The petitioner subsequently filed a motion for reconsideration, in which he argued that the habeas court did have subject matter jurisdiction because his claim was "an ex post facto claim" as opposed to a "parole eligibility" claim. Judge Kwak agreed with the petitioner that the issue of whether it had subject matter jurisdiction over the petitioner's ex post facto claim was a question in which "reasonable jurists could disagree . . . ." Id. He concluded, however, that the habeas court did not have subject matter jurisdiction because "[i]t [was] uncertain and highly speculative whether the wholly discretionary awarding of risk reduction credits creates a 'genuine risk' of petitioners such as . . . Petaway being incarcerated longer under the [2013 version of § 54-125a (b)] versus the [2011 version of § 54-125a (b)]." Id., *5. Judge Kwak vacated his previous order, and he dismissed the petitioner's petition but granted his petition for certification to appeal limited to the following question: "[W]hether retroactive application of [Public Act] § 13-3, and changes impacting parole eligibility dates as established by the wholly discretionary award of risk reduction credits, and not by pure operation of statute, gives rise to a colorable claim sufficient to establish subject matter jurisdiction?" Id.

[7] The petitioner argues on appeal that the habeas court improperly failed to consider his second claim in support of count one of his petition. Relying on *Johnson* v. *Commissioner of Correction*, 258 Conn. 804, 786 A.2d 1091 (2002), he argued in his petition that "the 2013 changes to [risk reduction earned credit] could not be applied retroactively to him because the legislature did not express an intention to apply the changes retroactively," which was distinct from his ex post facto claim. On the basis of our liberal reading of the language in his petition; see *Mourning* v. *Commissioner of Correction*, 120 Conn. App. 612, 624–25, 992 A.2d 1169, cert. denied, 297 Conn. 919, 996 A.2d 1192 (2010); we agree that the petitioner made two claims in support of count one. This reading, nevertheless, does not change our overall conclusion for two reasons. First, the petitioner's second claim misconstrues our Supreme Court's analysis in *Johnson*. In that case, the court concluded it did have subject matter jurisdiction and that the legislature did not intend for Number 95-225, § 1, of the 1995 Public Acts to have a retroactive effect. *Johnson* v. *Commissioner of Correction*, supra, 819, 829. Its conclusion, however, was not addressing a separate "legislative intent" claim but, rather, was part of the court's analysis as to whether the retroactive application of the law violated the petitioner's right against ex post facto laws. Second, to the extent that the petitioner's argument was a "parole eligibility" or "due process" claim, our jurisprudence expressly provides that parole eligibility is not a cognizable liberty interest sufficient to invoke a habeas court's jurisdiction. See *Baker* v. *Commissioner of Correction*, 281 Conn. 241, 252–62, 914 A.2d 1034 (2007); *Fuller* v. *Commissioner of Correction*, 144 Conn. App. 375, 378–80, 71 A.3d 689, cert. denied, 310 Conn. 946, 80 A.3d 907 (2013). Thus, the habeas court lacked subject matter jurisdiction over the petitioner's second claim.