******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# RAY BOYD *v.* COMMISSIONER OF CORRECTION
## (AC 42302)

Alvord, Prescott and Bright, Js.*

*Syllabus*

The petitioner, who had been convicted of the crime of murder when he was seventeen years old, sought a writ of habeas corpus, claiming that the respondent Commissioner of Correction failed to advance his parole eligibility date by applying statutory (§ 18-7a (c)) good time credit he had earned. The petitioner had been sentenced to a term of fifty years imprisonment without the possibility of parole. In 2015, the legislature amended the parole eligibility statute (§ 54-125a) to retroactively provide parole eligibility to juvenile offenders sentenced to more than ten years imprisonment. In 2016, the Board of Pardons and Paroles (board) informed the petitioner of his parole eligibility date, a calculation that did not reflect a reduction for the number of days of statutory good time credit he had earned. The habeas court granted the motion to dismiss filed by the respondent for failing to state a claim on which habeas corpus relief could be granted. On the granting of his petition for certification to appeal, the petitioner appealed to this court. *Held*:

1. Contrary to the respondent's claim, the habeas court properly determined that it had subject matter jurisdiction over the petition because the petitioner had a cognizable liberty interest in parole eligibility under § 54-125a (f): the legislature intended to vest the petitioner with a cognizable liberty interest in parole eligibility, as the language of § 54-125a (f) (1) (A) requires that the board shall consider the person for parole, and the text of § 54-125a (f) (3) reinforces the requirement that the board shall consider a person for parole by requiring that the board shall hold a hearing to determine a person's suitability for parole release when that person becomes eligible for parole; moreover, the language of § 54-125a (f) (2) provides that parole eligibility for juvenile offenders is unique, and such language evidences that the legislature intended for the petitioner to have a liberty interest in parole eligibility; furthermore, the language of § 54-125a (f) (5) serves to accentuate the mandatory nature of initial parole eligibility for individuals like the petitioner, as compared to subsequent parole eligibility, which is not guaranteed.

2. The petitioner could not prevail on his claim that the statutory good time credit he had earned reduced the sentence used to calculate his parole eligibility date, as the language of § 18-7a (c) and § 54-125a (f) is clear and unambiguous that it does not support such a claim: § 18-7a (c) contains no language providing that good time credit earned under that subsection operates to reduce a person's parole eligibility date, and there is no language to suggest that the legislature intended that a person's sentence, after it has been reduced by the application of good time credit, should serve as the sentence that is used to calculate their parole eligibility date under § 54-125a (f); moreover, there are no references to § 18-7a (c) in § 54-125a, and such omission implies that the legislature did not intend for the term "sentence," as used in § 54-125a (f) (1) (A), to be a person's sentence as reduced by the statutory good time credit they may have earned under § 18-7a (c), and the phrases "definite sentence" and "total effective sentence" in § 54-125a (f) (1) refer to the maximum term of imprisonment imposed by the sentencing court; furthermore, in § 54-125a (a) and (d) and in a parole eligibility statute (§ 54-125) for prisoners serving indeterminate sentences, the legislature expressly stated whether credit applied to shorten a person's sentence before that sentence was used to calculate their parole eligibility date, and, because the legislature did not include any such language in § 54-125a (f), it did not intend for statutory good time credit earned by a person under § 18-7a (c) to reduce the sentence that would serve as the basis for calculating his parole eligibility date.

3. The petitioner could not prevail on his claim that the statutory good time credit he had earned under § 18-7a (c) was not applied properly in violation of his right to due process; the petitioner was not entitled to have the statutory good time credit he had earned under § 18-7a (c)

applied to reduce the sentence from which his parole eligibility date will be calculated, and, because he did not have a liberty interest in his earned statutory good time credit advancing his parole eligibility date, he was not being deprived of a liberty interest and, thus, was not being deprived of due process.

Submitted on briefs April 17—officially released August 18, 2020

*Procedural History*

Petition for a writ of habeas corpus, brought to the Superior Court in the judicial district of Tolland where the court, *Kwak, J.*, granted the respondent's motion to dismiss; judgment dismissing the petition, from which, the petitioner, on the granting of certification, appealed to this court. *Affirmed.*

*Michael W. Brown*, assigned counsel, filed a brief for the appellant (petitioner).

*Steven R. Strom*, assistant attorney general, and *William Tong*, attorney general, filed a brief for the appellee (respondent).

*Opinion*

ALVORD, J. The petitioner, Ray Boyd, appeals from the judgment of the habeas court dismissing his petition for a writ of habeas corpus, which challenged the failure of the respondent, the Commissioner of Correction, to advance the petitioner's parole eligibility date by applying statutory good time credit he has earned. On appeal, the petitioner claims that the court improperly dismissed his petition. We disagree and affirm the judgment of the court.

The following procedural and statutory history is relevant to this appeal. On September 30, 1992, a jury found the petitioner guilty of a murder that he committed on September 23, 1989, when he was seventeen years old, in violation of General Statutes (Rev. to 1989) § 53a-54a. See *State* v. *Boyd*, 36 Conn. App. 516, 518–19, 651 A.2d 1313 (*Boyd I*), cert. denied, 232 Conn. 912, 654 A.2d 356, cert. denied, 516 U.S. 828, 116 S. Ct. 98, 133 L. Ed. 2d 53 (1995); see also *State* v. *Boyd*, 323 Conn. 816, 818, 151 A.3d 355 (2016) (*Boyd II*). On November 20, 1992, the court sentenced the petitioner to a term of fifty years imprisonment without the possibility of parole. *Boyd II*, supra, 818; see also General Statutes § 54-125a (b) (1).[1] On appeal, this court affirmed the trial court's judgment of conviction. *Boyd I*, supra, 525.

In 2015, the legislature amended § 54-125a by, inter alia, adding subsection (f); see Public Acts 2015, No. 15-84, § 1; which retroactively provided parole eligibility to juvenile offenders sentenced to more than ten years imprisonment. As a result of the 2015 amendment, the petitioner will become parole eligible after serving 60 percent of his fifty year sentence. See General Statutes § 54-125a (f) (1) (A).[2] In a letter dated March 29, 2016, the Board of Pardons and Paroles (board) informed the petitioner that his parole eligibility date is September 13, 2022. In arriving at the petitioner's parole eligibility date, the board subtracted sixty-seven days of presentence confinement credit earned by the petitioner from the number of days in his fifty year sentence, and then multiplied that difference by 60 percent in accordance with § 54-125a (f) (1) (A). The board's calculation did not reduce the petitioner's fifty year sentence by the number of days of statutory good time credit he had earned pursuant to General Statutes § 18-7a (c)[3] up to that point in time before the sentence was multiplied by 60 percent.

On January 16, 2018, the self-represented petitioner filed a petition for a writ of habeas corpus challenging the board's calculation of his parole eligibility date.[4] Specifically, the petitioner made two claims. First, he alleged that the board misinterpreted § 18-7a (c) when the board failed to apply the statutory good time credit he had earned to his sentence from which his parole eligibility date is calculated under § 54-125a (f) (1) (A).

Second, the petitioner claimed that his right to due process was violated by the board's misapplication of the statutory good time credit he had earned.

On January 24, 2018, the habeas court, *Westbrook, J.*, ordered that the petition be "docket[ed]," and it scheduled a hearing in which the petitioner and the respondent were ordered to appear to address questions posed by the court.[5] On March 5, 2018, the respondent filed a motion to dismiss the petition pursuant to Practice Book § 23-29 and a memorandum of law in support thereof. According to the respondent, the petition was subject to dismissal due to a lack of subject matter jurisdiction, a "lack of standing, lack of any injury, failure to state a cognizable interest under any legal theory, and under the political question doctrine." On May 4, 2018, Attorney Miller, as counsel for the petitioner, filed an opposition to the respondent's motion to dismiss. On June 6, 2018, the court, *Kwak, J.*, held a hearing to address the questions raised in Judge Westbrook's January 24, 2018 order and the respondent's motion to dismiss. Thereafter, on October 3, 2018, Judge Kwak issued a memorandum of decision granting the respondent's motion to dismiss under Practice Book § 23-29 (2) for failing to state a claim upon which habeas corpus relief can be granted. With respect to the petitioner's first claim, Judge Kwak concluded that there was no authority to support his statutory interpretation and, thus, "[t]he relief [the petitioner sought], which [was] an order from the habeas court compelling [the board] to apply [statutory good time] credits to advance the parole eligibility date established by . . . § 54-125a (f) (1) (a), cannot be granted." With respect to the petitioner's second claim, Judge Kwak concluded that that claim "is not a cognizable due process claim and fails to state a claim for which a habeas court can grant relief." On October 22, 2018, Judge Kwak granted the petitioner's petition for certification to appeal from the October 3, 2018 judgment of dismissal. This appeal followed.

I

As a preliminary matter, the respondent argues that the petitioner's claims lack the "essential predicate" of a "cognizable liberty interest." The respondent's argument that the petitioner's claims lack a "cognizable liberty interest" amounts to a challenge to the habeas court's jurisdiction. "[I]n order to invoke successfully the jurisdiction of the habeas court, a petitioner must allege an interest sufficient to give rise to habeas relief." (Internal quotation marks omitted.) *Perez* v. *Commissioner of Correction*, 326 Conn. 357, 368, 163 A.3d 597 (2017). "When a petitioner seeks habeas relief on the basis of a purported liberty interest in parole eligibility, he is invoking a liberty interest protected by the [d]ue [p]rocess [c]lause of the [f]ourteenth amendment which may not be terminated absent appropriate due process

safeguards. . . . In order . . . to qualify as a constitutionally protected liberty, [however] the interest must be one that is *assured* either by statute, judicial decree, or regulation. . . . Evaluating whether a right has vested is important for claims under the . . . [d]ue [p]rocess [c]lause of the [f]ourteenth amendment, which solely protect[s] pre-existing entitlements." (Citations omitted; emphasis in original; internal quotation marks omitted.) Id., 370. Because the respondent argues that the habeas court lacked jurisdiction over the petition, we address this argument at the outset. See *Baker* v. *Commissioner of Correction*, 281 Conn. 241, 249, 914 A.2d 1034 (2007) ("[i]t is axiomatic that once the issue of subject matter jurisdiction is raised, it must be immediately acted upon by the court" (internal quotation marks omitted)).Our review of the habeas court's subject matter jurisdiction, a question of law, is plenary. See id., 248.

Whether the petitioner has a cognizable liberty interest in parole eligibility status under § 54-125a (f) is a question of statutory interpretation. "The interpretation and application of a statute . . . involves a question of law over which our review is plenary. . . . The process of statutory interpretation involves the determination of the meaning of the statutory language as applied to the facts of the case . . . . When construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case . . . . In seeking to determine that meaning . . . [we] consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationships, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered." (Internal quotation marks omitted.) *Fernandez* v. *Commissioner of Correction*, 193 Conn. App. 746, 759, 220 A.3d 216, cert. denied, 333 Conn. 946, 219 A.3d 376 (2019); see also General Statutes § 1-2z. In interpreting § 54-125a, we do not write on a blank slate. In two prior cases, our Supreme Court has interpreted the text of § 54-125a to determine whether it provides a petitioner with a liberty interest in parole eligibility. See *Perez* v. *Commissioner of Correction*, supra, 326 Conn. 357; *Baker* v. *Commissioner of Correction*, supra, 281 Conn. 241. Because our interpretation of § 54-125a (f) is informed by our Supreme Court's analysis in *Baker* and *Perez*, we preface our discussion with a synopsis of each case.

In *Baker*, the petitioner had alleged that he improperly had been classified as a violent offender under General Statutes (Rev. to 2001) § 54-125a (b) (2) and (c), as amended by Public Acts, Spec. Sess., June, 2001, No. 01-9, § 74, thus rendering him ineligible for parole

until he served 85 percent of his sentence, and that he should have been classified as a nonviolent offender under subsection (a) of that statute, which would have made him eligible for parole after he had served 50 percent of his sentence. *Baker* v. *Commissioner of Correction*, supra, 281 Conn. 245–46. Our Supreme Court held that the petitioner did not have a cognizable liberty interest in his parole eligibility status sufficient to invoke the subject matter jurisdiction of the habeas court. Id., 243, 251–52. In reaching that conclusion, the court was guided by United States Supreme Court precedent. See *Greenholtz* v. *Inmates of the Nebraska Penal & Correctional Complex*, 442 U.S. 1, 11–12, 99 S. Ct. 2100, 60 L. Ed. 2d 668 (1979) (*Greenholtz*) (holding that mandatory language in state's parole statute created cognizable liberty interest); *Board of Pardons* v. *Allen*, 482 U.S. 369, 378 n.10, 107 S. Ct. 2415, 96 L. Ed. 2d 303 (1987) (same). In contrast to the statutes at issue in *Greenholtz* and *Allen,* the court in *Baker* observed that (1) the "only mandatory language in [the amended 2001 revision of § 54-125a] is that in subsection (b) *preventing* the board from considering violent offenders for parole before they have served 85 percent of their sentences";[6] (emphasis in original) *Baker* v. *Commissioner of Correction*, supra, 255; (2) "the broad, discretionary nature of the board's authority in classifying offenders [as violent] is underscored in subsection (c) [of § 54-125a]"; id., 255–56; and (3) "the decision to grant parole [under § 54-125a] is entirely within the discretion of the board." Id., 257. In light of the permissive language of § 54-125a, the court concluded that the petitioner did not possess a cognizable liberty interest in parole eligibility. See id., 257.

In *Perez*, the petitioner had committed an offense involving the use of deadly force in November, 2010. *Perez* v. *Commissioner of Correction*, supra, 326 Conn. 362. Subsection (b) (2) of § 54-125a in effect at that time provided that a person "shall be ineligible for parole" until he or she "served not less than eighty-five per cent of the definite sentence imposed." General Statutes (Rev. to 2009) § 54-125a (b) (2). Subsection (e) in effect at that time stated that once a person had served 85 percent of his or her definite or aggregate sentence, the board "shall hold a hearing to determine the suitability for parole release . . . ." General Statutes (Rev. to 2009) § 54-125a (e). In *Perez*, in July, 2011, while the petitioner's criminal case was pending before the trial court; see *Perez* v. *Commissioner of Correction*, supra, 363; General Statutes § 18-98e became effective, vesting the Commissioner of Correction with discretion to award, and revoke, risk reduction credit toward the sentence of an inmate. Subsection (b) (2) also was amended to provide that a person "shall be ineligible for parole" until he or she has "served not less than eighty-five per cent of the definite sentence imposed *less any risk reduction credit earned under*

*the provisions of section 18-98e.*" (Emphasis added.) See Public Acts 2011, No. 11-51, § 25, codified at General Statutes (Supp. 2012) § 54-125a (b) (2). Subsection (e) similarly was amended to reflect that earned risk reduction credit advanced a person's parole eligibility date. See Public Acts 2011, No. 11-51, § 25, codified at General Statutes (Supp. 2012) § 54-125a (e).

In May, 2013, the petitioner in *Perez* received a total effective sentence of fifteen years imprisonment. *Perez* v. *Commissioner of Correction*, supra, 326 Conn. 364. The legislature again amended § 54-125a, effective July 1, 2013, to eliminate language from subsections (b) (2) and (e) that applied risk reduction credit to advance a person's parole eligibility date. See Public Acts 2013, No. 13-3, § 59, codified at General Statutes (Supp. 2014) § 54-125a (b) (2) and (e). Language requiring that the board "shall" hold a parole hearing after a person served 85 percent of his definite or aggregate sentences was also amended to state that the board "may" hold such a hearing, but "[i]f a hearing is not held, the board shall document the specific reasons for not holding a hearing and provide such reasons to such person. . . ." See Public Acts 2013, No. 13-247, § 376, codified at General Statutes (Supp. 2014) § 54-125a (e).

The petitioner in *Perez* then filed a writ of habeas corpus challenging the commissioner's application of the 2013 amendments to the calculation of his parole eligibility date and his right to a parole hearing as a violation of, inter alia, his right to due process under the federal and state constitutions. *Perez* v. *Commissioner of Correction*, supra, 326 Conn. 365–66. Despite mandatory language under the July, 2011 amendments that the board "shall" hold a parole hearing after a person served "eighty-five per cent of the definite sentence imposed less any risk reduction credit earned"; General Statutes (Supp. 2012) § 54-125a (b) (2); language which was not present in *Baker*; see footnote 6 of this opinion; our Supreme Court in *Perez* determined that the petitioner had no cognizable liberty interest in parole eligibility. The court stated that "neither the substantive (parole eligibility calculation) nor the procedural (hearing) changes under the 2013 amendments altered the fundamental fact that the determination whether to grant an inmate parole is entirely at the discretion of the board. It follows that if an inmate has no vested liberty interest in the *granting* of parole, then the *timing* of when the board could, in its discretion, grant parole does not rise to the level of a vested liberty interest either." (Emphasis in original.) *Perez* v. *Commissioner of Correction*, supra, 371. According to the court, the lack of a vested liberty interest was "further compounded" by the fact that risk reduction credit is awarded, and may be revoked, at any time for good cause in the discretion of the Commissioner of Correction. Id., 372. As it had in *Baker*, the court in *Perez* concluded that the petitioner's claims lacked a cogniza-

ble liberty interest in parole eligibility and, thus, were insufficient to invoke the habeas court's jurisdiction. See id., 374.

Informed by our review of *Baker* and *Perez*, in order to determine whether the petitioner has a cognizable liberty interest in parole eligibility, we turn now to our interpretation of § 54-125a (f). As set forth in the following paragraphs, we observe meaningful textual differences between the subsections of § 54-125a that were at issue in *Baker* and *Perez* and subsection (f) of § 54-125a. As such, we conclude that the legislature intended to vest the petitioner with a cognizable liberty interest in parole eligibility.

First, and significantly, § 54-125a (f) (1) (A) states in relevant part that "if such person is serving a sentence of fifty years or less, such person *shall be eligible for parole* after serving sixty per cent of the sentence or twelve years, whichever is greater . . . ." (Emphasis added.) By contrast, subsection (b) (2), which applied to the petitioner in *Baker*, stated that he "*shall be ineligible* for parole" until he served 85 percent of his sentence. (Emphasis added.) General Statutes (Rev. to 2001) § 54-125a (b) (2), as amended by Public Acts, Spec. Sess., June, 2001, No. 01-9, § 74; *Baker* v. *Commissioner of Correction*, supra, 255. Subsection (b) (2) likewise applied to the petitioner in *Perez* v. *Commissioner of Correction*, supra, 326 Conn. 362. The language employed in § 54-125a (f) (1) (A) stands in marked contrast to that of § 54-125a (b) (2). The language of § 54-125a (f) (1) (A) does not contain mandatory language *preventing* the board from considering a person for parole until they have served a percentage of their sentence; see *Baker* v. *Commissioner of Correction*, supra, 255; but, rather, requires that the board *shall consider* the person for parole. The United States Supreme Court has recognized that such mandatory language gives "rise to [a] constitutionally protected liberty [interest] . . . ." Id., 257; see also *Greenholtz*, supra, 442 U.S. 11–12; *Board of Pardons* v. *Allen*, supra, 482 U.S. 378 n.10.

Second, the text of § 54-125a (f) (3) reinforces the requirement of subsection (f) (1), that the board shall consider a person for parole, by requiring that "[w]henever a person becomes eligible for parole pursuant to this subsection, the board *shall* hold a hearing to determine such person's suitability for parole release. . . ." (Emphasis added.) In *Baker*, the court noted that "[t]here is no statutory requirement that the [board] actually consider the eligibility of any inmate for parole, the statute does not vest an inmate with the right to demand parole, and there is no statutory provision [that] even permits an inmate to apply for parole." (Internal quotation marks omitted.) *Baker* v. *Commissioner of Correction*, supra, 281 Conn. 257; see also *Perez* v. *Commissioner of Correction*, 326 Conn. 373–

74. By contrast, under § 54-125a (f) (3), there is a mandatory requirement that the board "actually consider the eligibility of [the petitioner] for parole . . . ." See *Baker* v. *Commissioner of Correction*, supra, 257. Moreover, the petitioner need not demand or apply for parole because, under subsection (f) (3), the board is required to hold a hearing "[w]henever a person becomes eligible for parole release," and the petitioner in the present case will become eligible for parole release after serving 60 percent of his fifty year sentence under § 54-125a (f) (1) (A).

The legislature's emphasis on individuals like the petitioner receiving parole consideration is further underscored by a comparison of the language of § 54-125a (f) (3) with the current language of § 54-125a (d) and (e), both of which provide that the board "*may* hold a hearing to determine the suitability for parole release of any person . . . ." (Emphasis added.) Moreover, although § 54-125a (d) and (e) excuse the board from holding a parole hearing so long as the board "document[s] the specific reasons for not holding a hearing and provide[s] such reasons to such person," § 54-125a (f) (4) contains no such language. This discrepancy reveals the significance the legislature attached to parole consideration for individuals like the petitioner, such that the legislature requires that those persons receive their parole consideration by way of a guaranteed hearing. The importance of such parole consideration for individuals like the petitioner to the legislature is further reflected in the fact that, at their parole hearings, the court must assign counsel to any indigent individuals pursuant to § 54-125a (f) (3), an entitlement that is not extended to individuals who may be considered for parole under any other subsection of § 54-125a.

Third, subsection (f) (2) of § 54-125a provides that "[t]he board shall apply the parole eligibility rules of this subsection only with respect to the sentence for a crime or crimes committed while a person was under eighteen years of age. Any portion of a sentence that is based on a crime or crimes committed while a person was eighteen years of age or older shall be subject to the applicable parole eligibility, suitability and release rules set forth in subsections (a) to (e), inclusive, of this section." The text of subsection (f) (2) explicitly distinguishes parole eligibility under subsection (f) (1) from other subsections of § 54-125a that govern parole eligibility, including subsection (b) (2), which was the subject of interpretation in *Baker* and *Perez*. This language, thus, provides that parole eligibility for juvenile offenders is unique. Particularly when read in conjunction with subsection (f) (1), which states that a "person shall be eligible for parole," the language of subsection (f) (2) leads us to conclude that the legislature intended for the petitioner to have a liberty interest in parole eligibility. Cf. *Baker* v. *Commissioner of Correction*, supra, 281 Conn. 255 ("the only mandatory language in

these provisions is that in subsection (b) *preventing* the board from considering violent offenders for parole before they have served 85 percent of their sentences" (emphasis in original)).

Fourth, and finally, subsection (f) (5) states that when the board denies a person parole following a hearing, the board "may reassess such person's suitability for a new parole hearing at a later date to be determined at the discretion of the board, but not earlier than two years after the date of its decision." General Statutes § 54-125a (f) (5). This language serves to accentuate the mandatory nature of initial parole eligibility for individuals like the petitioner, as compared to subsequent parole eligibility, which is not guaranteed.

The respondent notes that § 54-125a (f) (4) vests the board with discretion over whether to grant a person parole. In *Baker* and *Perez*, the board's discretion over whether to grant a person parole, in part, justified the court's conclusion that the petitioners in those cases had no cognizable liberty interest in parole eligibility. See *Perez* v. *Commissioner of Correction*, supra, 326 Conn. 371; *Baker* v. *Commissioner of Correction*, supra, 281 Conn. 257. There is, however, a distinction between parole eligibility and parole suitability. Under § 54-125a (f), a person's suitability to be released on parole is a decision that is left to the discretion of the board, but not their parole eligibility. Compare General Statutes § 54-125a (f) (3) ("the board *shall* hold a hearing to determine such person's *suitability* for parole release" (emphasis added)), with General Statutes § 54-125a (f) (4) ("the board *may* allow such person to go at large on parole" (emphasis added)). For all of the foregoing reasons, we conclude that the text of § 54-125a (f) meaningfully differs from the subsections of § 54-125a discussed in *Baker* and *Perez*, and clearly and unambiguously provides the petitioner with a vested right in parole eligibility.[7]

Accordingly, we conclude that the habeas court properly determined that it had subject matter jurisdiction over the petition because the petitioner has a cognizable liberty interest in parole eligibility under § 54-125a (f). Having concluded that the habeas court had subject matter jurisdiction over the petition, we next consider the claims made on appeal by the petitioner.

II

On appeal, the petitioner claims that the court improperly dismissed his petition because the court had incorrectly concluded that (1) "there [is] no statutory basis for [his] claims," and (2) he had "not adequately alleged a due process violation based upon the respondent's failure to appropriately apply [his] earned [statutory good time credit] to [his] parole eligibility date." "[W]hether a habeas court properly dismissed a petition pursuant to Practice Book § 23-29 (2), on the

ground that it fails to state a claim upon which habeas corpus relief can be granted, presents a question of law over which our review is plenary." (Internal quotation marks omitted.) *Perez* v. *Commissioner of Correction*, supra, 326 Conn. 368. We will discuss each of the petitioner's claims seriatim.[8]

A

The petitioner first claims that the court improperly dismissed his petition following its incorrect conclusion that his statutory construction claim failed to state a claim upon which habeas corpus relief can be granted. The petitioner argues that, "[i]f [statutory good time credit earned under § 18-7a (c)] does serve to actually reduce [his] sentence, then the plain language of . . . § 54-125a (f) indicates that the 'sentence' that [he] is serving for the purposes of those calculations is the [statutory good time credit] reduced new sentence. . . . Stated in another way, the petitioner's position is that [statutory good time credit] serves to change [his] sentence before ever looking to the parole statute."[9] We disagree.

The petitioner's claim requires us to interpret §§ 18-7a (c) and 54-125a (f). The principles governing our interpretation of statutes are as previously set forth in part I of this opinion. See also *Fernandez* v. *Commissioner of Correction*, supra, 193 Conn. App. 759. Section 18-7a (c) provides in relevant part that "[a]ny person sentenced to a term of imprisonment for an offense committed on or after July 1, 1983, may, while held in default of bond or while serving such sentence, by good conduct and obedience to the rules which have been established for the service of his sentence, earn a reduction of his sentence as such sentence is served . . . ." Section 18-7a (c) further provides the maximum rate at which a person may earn good time credit, that such credit may be revoked by the respondent for "[m]isconduct or refusal to obey the rules," and that good time may even be "deducted from any good time earned in the future" if a person "has not yet earned sufficient good time to satisfy the good time loss . . . ." The language of § 18-7a (c) is clear and unambiguous that the phrases "his sentence" and "such sentence" are references to the sentence of "a term of imprisonment for an offense committed on or after July 1, 1983," that was imposed by the sentencing court. Accordingly, any good time credit earned by a person will apply to reduce the expiration date of the term of imprisonment imposed at sentencing. See *Seno* v. *Commissioner of Correction*, 219 Conn. 269, 281, 593 A.2d 111 (1991) ("[i]t is clear . . . that [the phrases 'of his sentence' and 'of a sentence'] as used in § 18-7a [(a) through (c)] refer to the sentence as imposed by the court, reduced by the applicable good time"). Section 18-7a (c) contains no language providing that good time credit earned under the subsection operates to reduce a person's

parole eligibility date. Moreover, we find no language in § 18-7a (c) to suggest that the legislature intended that a person's sentence, after it has been reduced by the application of good time credit, should serve as the sentence that is used to calculate his parole eligibility date under § 54-125a (f). The petitioner fails to direct us to any such language.

The text of § 54-125a (f) also does not provide support for the petitioner's argument. The relevant portion of § 54-125a (f) provides: "(1) Notwithstanding the provisions of subsections (a) to (e), inclusive, of this section, a person convicted of one or more crimes committed while such person was under eighteen years of age, who is incarcerated on or after October 1, 2015, and who received a definite sentence or total effective sentence of more than ten years for such crime or crimes prior to, on or after October 1, 2015, may be allowed to go at large on parole in the discretion of the panel of the Board of Pardons and Paroles for the institution in which such person is confined, provided (A) if such person is serving a sentence of fifty years or less, such person shall be eligible for parole after serving sixty per cent of the sentence or twelve years, whichever is greater . . . ." There are no references to § 18-7a (c) in § 54-125a (f), or elsewhere in § 54-125a for that matter. This omission implies that the legislature did not intend for the term "sentence," as that term is used in § 54-125a (f) (1) (A), to be a person's sentence as reduced by the statutory good time credit he may have earned under § 18-7a (c).

Indeed, the legislature clearly expressed what it intended the term "sentence" to mean in § 54-125a (f) (1) (A). Within subsection (f) (1), in which the legislature set forth the necessary qualifications for parole eligibility, we find the first reference to the term "sentence." Subsection (f) (1) applies to persons who were convicted of one or more crimes committed while they were under eighteen years of age, have been incarcerated on or after October 1, 2015, and "received a *definite sentence or total effective sentence of more than ten years* for such crime or crimes . . . ." (Emphasis added.) The phrases "definite sentence" and "total effective sentence" refer to the maximum term of imprisonment imposed by the sentencing court. See General Statutes § 53a-35a ("[f]or any felony committed on or after July 1, 1981, the sentence of imprisonment shall be a definite sentence and . . . the term shall be fixed by the court as follows"); *Holliday* v. *Commissioner of Correction*, 184 Conn. App. 228, 232 n.3, 194 A.3d 867 (2018) ("[d]efinite sentence is the flat maximum to which a defendant is sentenced" (internal quotation marks omitted)), cert. granted on other grounds, 335 Conn. 901, 225 A.3d 960 (2020). All subsequent references to the term "sentence" in § 54-125a (f) (1) must be read consistently with the use of the phrases "definite sentence" and "total effective sentence," and,

thus, are references to the maximum term of imprisonment imposed by the sentencing court. Therefore, within the language of subsection (f) (1) (A) of § 54-125a, which is applicable to a person "serving a sentence of fifty years or less," the term "sentence" should be understood as the definite sentence or total effective sentence that was imposed by the sentencing court, not yet reduced by any good time credit earned by a person under § 18-7a (c).

The petitioner argues that, "[c]ontrary to the respondent's view (and the conclusion of the habeas court), if the legislature had intended to exclude [statutory good time credit] from the juvenile parole procedures, it would have expressly said so." The petitioner has it exactly backward. Because "[t]here is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence"; (internal quotation marks omitted) *Baker* v. *Commissioner of Correction*, supra, 281 Conn. 253; had the legislature intended *to apply* statutory good time credit to reduce a person's parole eligibility date under § 54-125a (f), it would have stated that intention explicitly. See *Stratford* v. *Jacobelli*, 317 Conn. 863, 875 n.12, 120 A.3d 500 (2015) ("legislature knows how to convey its intent expressly" (internal quotation marks omitted)).

The flaw in the petitioner's argument becomes apparent when the language of § 54-125a (f) (1) (A) is contrasted with the language of subsections (a) and (d) of § 54-125a and with General Statutes § 54-125. Both subsections (a) and (d) of § 54-125a expressly state that before a person may be released on, or considered for release on, parole, that person must serve a specified percentage of their sentence "*less any risk reduction credit earned under the provisions of section 18-98e.*" (Emphasis added.); see also *Perez* v. *Commissioner of Correction*, supra, 326 Conn. 365 (noting that legislature amended § 54-125a (b) (2) and (e) to eliminate application of risk reduction credit advancing person's parole eligibility date by deleting phrase "less any risk reduction credit earned under the provisions of section 18-98e"). The text of § 54-125 states in relevant part: "Any person confined for an indeterminate sentence, after having been in confinement under such sentence for not less than the minimum term, or, if sentenced for life, after having been in confinement under such sentence for not less than the minimum term imposed by the court, *less such time as may have been earned under the provisions of section 18-7*, may be allowed to go at large on parole . . . ." (Emphasis added.)

In §§ 54-125a (a) and (d) and 54-125, the legislature expressly stated whether credit applied to shorten a person's sentence before that sentence was used to calculate his parole eligibility date. Because the legislature did not include any such language in § 54-125a (f), we conclude that the legislature did not intend for

statutory good time credit earned by a person under § 18-7a (c) to reduce his sentence that will serve as the basis for calculating his parole eligibility date. See *Aspetuck Country Club, Inc.* v. *Weston*, 292 Conn. 817, 829, 975 A.2d 1241 (2009) ("statutes should be construed, where possible, so as to create a rational, coherent and consistent body of law" (internal quotation marks omitted)).

The petitioner argues that the court overlooked "that pursuant to [General Statutes] §§ 18-7 and 18-7a (c), [statutory good time credit] always reduces parole eligibility dates as it diminishes the sentence" and that "[n]othing in § 54-125a (f) (1) requires the respondent to deviate from statutorily-mandated historical practice of calculating parole eligibility dates based on [statutory good time credit]." In making this argument, the petitioner relies on the following language in the first footnote of *Seno* v. *Commissioner of Correction*, supra, 219 Conn. 269 n.1: "[G]ood time is a commutation of a sentence, affecting an inmate's *parole* and discharge *dates*, thereby serving an important rehabilitative function by allowing an inmate the opportunity to earn an earlier release for himself. See *McGinnis* v. *Royster*, 410 U.S. 263, 271, 93 S. Ct. 1055, 35 L. Ed. 2d 282 [1973]. *Holmquist* v. *Manson*, 168 Conn. 389, 394, 362 A.2d 971 (1975)." (Emphasis added; internal quotation marks omitted.) The court provided this definition of "good time" as it was setting out the "sole issue in [the] appeal," which was "whether a person sentenced to a term of imprisonment exceeding five years must be incarcerated for five calendar years in order to earn statutory good time at the rate of twelve days per month pursuant to . . . § 18-7a (c)." (Footnote omitted.) *Seno* v. *Commissioner of Correction*, supra, 269.

The court's definition of "good time" in *Seno* was taken from *Holmquist* v. *Manson*, supra, 168 Conn. 394, which cited *McGinnis* v. *Royster*, supra, 410 U.S. 271. The issue before the court in *Seno* concerned how much statutory good time the petitioner had earned; it did not concern his parole eligibility date. See *Seno* v. *Commissioner of Correction*, Superior Court, judicial district of Tolland, Docket No. 89-551 (September 10, 1991) ("[i]n accordance with the opinion of [our] Supreme Court, *Seno* v. *Commissioner of Correction*, [supra, 219 Conn. 269] the writ herein is granted, judgment is entered for the petitioner, and the respondent is ordered to grant the petitioner an additional thirty days statutory good time against his *total effective sentence*" (emphasis added)).

Furthermore, the language used in *Holmquist* and *McGinnis*, and cited to by the court in *Seno*, reflected statutes at issue in those cases that expressly authorized the application of good time credit to parole eligibility dates. In *Holmquist*, the issue before the court was "whether the plaintiff, who was sentenced to life impris-

onment, [was] entitled to credit for presentence confinement, commonly referred to as 'jail time,' under the provisions of General Statutes §§ 18-97 and 18-98. In determining this issue, [the court] also consider[ed] §§ 54-125 and 18-7." *Holmquist* v. *Manson*, supra, 168 Conn. 390–91. The defendant, the Commissioner of Correction, in that case claimed that, under §§ 54-125 and 18-7, "an inmate serving a life sentence [was] required to serve a minimum of twenty years after the day of sentencing before he becomes eligible for parole consideration, i.e., twenty-five years under the minimum sentence, less five years maximum earned or 'good time' as provided in § 18-7," and that the plaintiff was not entitled to presentence confinement credit. Id., 392. The court disagreed with the defendant and, in so doing, distinguished "jail time" from "good time," stating that the latter "is a commutation of a sentence, affecting an inmate's parole and discharge dates . . . . See *McGinnis* v. *Royster*, [supra, 410 U.S. 271]." *Holmquist* v. *Manson*, supra, 394. The court's definition of "good time," however, was influenced by the text of what it referred to as the " 'good-time' statute," § 54-125. Id., 393. Section 54-125 expressly provided that the good time credit earned by a person under § 18-7 would be applied to reduce the "minimum term" of his indeterminate sentence, i.e., their parole eligibility date.[10] Id., 391–92. In contrast, § 54-125a (f) (1) (A) does not provide that a person's sentence, from which his parole eligibility date will be calculated, may be reduced by the good time credit he have earned under § 18-7a (c).

In *McGinnis*, the United States Supreme Court ruled on an equal protection claim challenging the constitutionality of a New York statute that denied state prisoners good time credit for their presentence incarceration in county jails. *McGinnis* v. *Royster*, supra, 410 U.S. 264–65. Crucially, one of the statutes at issue in the case "authorize[d] [good time] credit *toward the minimum parole date* for good conduct and efficient and willing performance of duties assigned . . . ." (Emphasis added; internal quotation marks omitted.) Id., 271. To reiterate, § 54-125a (f) (1) (A) does not permit good time credit to be applied to reduce a person's sentence that will be used to calculate his parole eligibility date. Accordingly, the definition of statutory good time in *Seno*, although stated by the court when construing § 18-7a (c), has no relevance to the calculation of parole eligibility dates under § 54-125a (f) (1) (A). Thus, we reject the petitioner's argument.

On the basis of the foregoing, we conclude that the language of §§ 18-7a (c) and 54-125a (f) is clear and unambiguous and that it does not support the claim of the petitioner that the statutory good time credit he has earned reduces the sentence used to calculate his parole eligibility date.

B

The petitioner's second claim on appeal is that the court improperly dismissed his claim that the statutory good time credit he has earned under § 18-7a (c) is not being applied properly to the sentence from which his parole eligibility date will be calculated, in violation of his right to due process under *Sandin* v. *Conner*, 515 U.S. 472, 483–84, 115 S. Ct. 2293, 132 L. Ed. 2d 418 (1995), and *Wilkinson* v. *Austin*, 545 U.S. 209, 222–23, 125 S. Ct. 2384, 162 L. Ed. 2d 174 (2005). We disagree.

"The fourteenth amendment to the United States constitution provides that the [s]tate [shall not] deprive any person of life, liberty, or property, without due process of law . . . ." (Internal quotation marks omitted.) *State* v. *Angel C.*, 245 Conn. 93, 104, 715 A.2d 652 (1998). "In order to prevail on his due process claim, the [petitioner] must prove that: (1) he has been deprived of a property [or liberty] interest cognizable under the due process clause; and (2) the deprivation of the property [or liberty] interest has occurred without due process of law. . . . States may under certain circumstances create liberty interests [that] are protected by the [d]ue [p]rocess [c]lause. . . . But these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the [d]ue [p]rocess [c]lause of its own force . . . nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." (Citations omitted; internal quotation marks omitted.) *Vandever* v. *Commissioner of Correction*, 315 Conn. 231, 241–42, 106 A.3d 266 (2014).

The petitioner argues that he possesses "a liberty interest in the correct application of the [statutory good time credit] he earned and retains" and that the "respondent's refusal to apply the [statutory good time credit] he [has] earned and still retains to calculate his parole [eligibility date] strips him of part of the value of his [statutory good time credit] . . . ." As discussed previously in part II A of this opinion, the petitioner is not entitled to have the statutory good time credit he has earned under § 18-7a (c) applied to reduce the sentence from which his parole eligibility date will be calculated pursuant to § 54-125a (f) (1) (A). Because the petitioner does not have a liberty interest in his earned statutory good time credit advancing his parole eligibility date, he is not being deprived of a liberty interest and, thus, is not being deprived of due process. See *Vandever* v. *Commissioner of Correction*, supra, 315 Conn. 241. Accordingly, the court properly dismissed the petition for failing to state a due process claim upon which habeas corpus relief can be granted.[11]

The judgment is affirmed.

In this opinion the other judges concurred.

* The listing of judges reflects their seniority status on this court as of the date the appeal was submitted on briefs.

[1] General Statutes § 54-125a (b) (1) provides in relevant part: "No person convicted of any of the following offenses, which was committed on or after July 1, 1981, shall be eligible for parole under subsection (a) of this section: . . . (E) murder, as provided in section 53a-54a . . . ."

[2] General Statutes § 54-125a (f) provides in relevant part: "(1) Notwithstanding the provisions of subsections (a) to (e), inclusive, of this section, a person convicted of one or more crimes committed while such person was under eighteen years of age, who is incarcerated on or after October 1, 2015, and who received a definite sentence or total effective sentence of more than ten years for such crime or crimes prior to, on or after October 1, 2015, may be allowed to go at large on parole in the discretion of the panel of the Board of Pardons and Paroles for the institution in which such person is confined, provided (A) if such person is serving a sentence of fifty years or less, such person shall be eligible for parole after serving sixty per cent of the sentence or twelve years, whichever is greater . . . ."

[3] General Statutes § 18-7a (c) provides: "Any person sentenced to a term of imprisonment for an offense committed on or after July 1, 1983, may, while held in default of bond or while serving such sentence, by good conduct and obedience to the rules which have been established for the service of his sentence, earn a reduction of his sentence as such sentence is served in the amount of ten days for each month served and pro rata for a part of a month served of a sentence up to five years, and twelve days for each month served and pro rata for a part of a month served for the sixth and each subsequent year of a sentence which is more than five years. Misconduct or refusal to obey the rules which have been established for the service of his sentence shall subject the prisoner to the loss of all or any portion of such reduction by the commissioner or his designee. In the event a prisoner has not yet earned sufficient good time to satisfy the good time loss, such lost good time shall be deducted from any good time earned in the future by such prisoner."

[4] Attorney Temmy Ann Miller assisted with the preparation of the petition, but did not represent the petitioner at the time he filed the petition. The court later appointed Attorney Miller as counsel for the petitioner and she represented him at the court's June 6, 2018 hearing.

[5] The court's questions and the parties' responses thereto are not relevant to this appeal.

[6] Subsequent to the petitioner in *Baker* having filed his petition for a writ of habeas corpus on September 13, 2002; *Baker* v. *Warden*, Superior Court, judicial district of Tolland, Docket No. CV-02-0003742; the legislature amended § 54-125a to add new subsections (d) and (e). Public Acts 2004, No. 04-234, § 3. The legislature's enactment of new subsection (d) represented the first time it "explicitly required that the board conduct parole suitability hearings . . . for inmates not deemed violent offenders under § 54-125a (b) who may be eligible for parole under § 54-125a (a) after serving 50 percent of their sentences . . . ." *Baker* v. *Commissioner of Correction*, supra, 281 Conn. 256 n.12. Subsection (d), however, required the board to hold a hearing after an inmate served 75 percent of his sentence, not after he served 50 percent of his sentence. Id. Subsection (e) required the board to hold a parole hearing for inmates deemed to be violent offenders under subsection (b) who completed 85 percent of their sentences. Id.

[7] We further note that our Supreme Court has held that parole eligibility for juvenile offenders under § 54-125a (f) negates a claim of an illegal sentence of life imprisonment, or its equivalent, without parole under *Miller* v. *Alabama*, 567 U.S. 460, 132 S. Ct. 2455, 183 L. Ed. 2d 407 (2012), *State* v. *Riley*, 315 Conn. 637, 110 A.3d 1205 (2015), cert. denied,      U.S.    , 136 S. Ct. 1361, 194 L. Ed. 2d 376 (2016), and *Casiano* v. *Commissioner of Correction*, 317 Conn. 52, 115 A.3d 1031 (2015), cert. denied sub nom. *Semple* v. *Casiano*,      U.S.    , 136 S. Ct. 1364, 194 L. Ed. 2d 376 (2016). See *State* v. *McCleese*, 333 Conn. 378, 387, 215 A.3d 1154 (2019) ("parole eligibility under [§ 54-125a (f)] is an adequate remedy for a *Miller* violation under our state constitution just as it is under the federal constitution"); see also *Casiano* v. *Commissioner of Correction*, supra, 79 (holding that "the procedures set forth in *Miller* must be followed when considering whether to sentence a juvenile offender to fifty years imprisonment without parole"). Indeed, our Supreme Court in *McCleese* stated, "[t]o comport with federal constitutional requirements, the legislature passed No. 15-84 of the 2015 Public Acts [codified at General Statutes § 54-125a (f)]." *State* v. *McCleese*, supra, 383.

[8] The petitioner argues that the court improperly granted the respondent's motion to dismiss on a basis not raised by the respondent's motion and, as a result, he was deprived of his right to notice and an opportunity to be

heard. In his motion to dismiss, the respondent asserted that "[t]here is *no* statutory basis for [the petitioner's] claim, as he has not lost or forfeited any statutory good time . . . ." (Emphasis in original.) In his memorandum in support of his motion to dismiss, the respondent argued that "[t]here is no authority either in statute or in case law to support the petitioner's arguments, that he is entitled to [statutory good time credit] to reduce parole eligibility." If, as the respondent asserted before the habeas court, the petitioner's claims lack a statutory basis, the court could not grant him the relief he requested in his petition. Furthermore, at the June 6, 2018 hearing before the court, the respondent argued that the petition could be dismissed under Practice Book § 23-29 (2), and the petitioner responded to that argument. Accordingly, we are unpersuaded by the petitioner's argument.

[9] In its memorandum of decision, the court stated that "[t]he petitioner's assertion that [the board] must apply [statutory good time] credits to his parole eligibility date . . . would mean that if he earned ten years of . . . credits, then he would be parole eligible not thirty years [i.e., 60 percent] into his fifty year sentence, but instead at twenty years into his fifty year sentence." The petitioner argues that the court misinterpreted his claim, stating that, under his claim, he "would request that the habeas court order that [the board] calculate his parole eligibility date of 60 [percent] of [forty] years ([fifty] years minus the [ten] years of [statutory good time credit] for a [forty] year '[statutory good time credit] modified' sentence). This would require a parole hearing after [twenty-four] years of incarceration." The respondent argues that the claim the petitioner makes on appeal differs from the one he advanced before the habeas court. [We need not reach the respondent's argument that the petitioner's claim on appeal differs from the one he made before the habeas court because we conclude in this part of the opinion that, regardless of which calculation is used, his claim on appeal is unavailing.

[10] Effective at the time the plaintiff in *Holmquist* committed the crime for which he was convicted, § 54-125 stated: "Any person confined . . . for an indeterminate sentence, after having been in confinement under such sentence for not less than the minimum term, or, if sentenced for life, after having been in confinement under such sentence for not less than twenty-five years, *less such time*, *not exceeding a total of five years*, *as may have been earned under the provisions of section 18-7*, may be allowed to go at large on parole . . . ." (Emphasis added; internal quotation marks omitted.) *Holmquist* v. *Manson*, supra, 168 Conn. 391 n.3.

[11] As discussed in part I of this opinion, the petitioner has a cognizable liberty interest in *parole eligibility* sufficient to invoke the jurisdiction of the habeas court. The petitioner's due process claim pertains to the failure to apply good time credit to his *parole eligibility date*, which he contends is as a result of the respondent's incorrect interpretation of §§ 18-7a (c) and 54-125a (f). Because we disagree with the petitioner's interpretation of §§ 18-7a (c) and 54-125a (f), we conclude that he does not have a liberty interest under those statutes in having his parole eligibility date calculated on the basis of a sentence reduced by the statutory good time credit he has earned. Because he has no such liberty interest, he cannot state a due process claim upon which habeas corpus relief can be granted.

———————————————